*271 OPINION OF THE COURT
Paul A. Victor, J.
The above proceedings, although unrelated, present the identical venue issue, and thus are consolidated by the court solely for the purpose of this decision. In each proceeding the plaintiff is an assignee of a Kings County resident; and in each proceeding, the defendant moves, pursuant to subdivision (a) of CCA 305, for a change of venue from the County of Bronx to Kings County based on the residence of plaintiffs’ assignors.
Plaintiffs, however, contend that venue is properly placed in Bronx County in each proceeding because defendant does business in Bronx County and can therefore be “deemed a resident” of that County for venue purposes pursuant to subdivision (b) of CCA 305.
The Applicable Statutory Venue Provisions
CCA 301 provides in relevant part that:
“An action, other than a real property action shall be brought:
“(a) * * * in the county in which one of the parties resides at the commencement thereof.”
In addition, CCA 305 provides that:
“(a) If the plaintiff is an assignee of the cause of action, the original owner of the cause of action shall be deemed the plaintiff for the purpose of determining proper venue.
“(b) A corporation, joint-stock association or other unincorporated association shall be deemed a resident of any county wherein it transacts business, keeps an office, has an agency or is established by law.” (Emphasis supplied.)
The Issue Presented
Plaintiffs have chosen Bronx County as the venue for these proceedings based upon the residence of defendants as provided in subdivision (b) of CCA 305; and the ultimate issue presented is whether the defendant “transacts business” in the County of Bronx, and may thus be “deemed a resident” of Bronx County for venue purposes. No issue is presented concerning the jurisdiction of the court. The defendant has conceded that this court is possessed with in personam and subject matter jurisdiction.
Relevant Background
In each of the above-entitled proceedings, the plaintiff is a health service provider that supplied no-fault medical services *272 to defendant’s insured and then received an assignment of the insured’s claim against defendant. Plaintiffs, as assignees of the defendant’s insureds, commenced proceedings in Bronx County against defendant to recover the amounts claimed to be due and owing for said no-fault medical services. Plaintiffs admit that their assignors reside in Kings County but allege that, since defendant regularly issues no-fault insurance policies to residents of the County of Bronx, defendant “transacts business” in Bronx County within the meaning of the aforesaid New York City Civil Court venue statute and, thus, may be deemed to be a resident of Bronx County.
In support of the contention that defendant regularly issues policies to, and transacts business with, residents in the County of Bronx, the plaintiffs identify five such insurance policies by name, address and policy number. Not only does the defendant not controvert the specific proof submitted by plaintiffs, it neither denies that it regularly issues such policies to Bronx County residents, nor does it deny that it regularly engages in all of the other ancillary activities necessary to transact such business, e.g., solicitation of Bronx residents, issuance of insurance policies, collection of premiums, forwarding of invoices and other correspondence. The court has taken notice that, although the defendant bears the burden on this motion, the defendant has not even submitted an affidavit by a person with personal knowledge who can “state under oath facts showing that ground exists for such transfer” (CCA 306). Curiously, the defendant submits a photocopy of an affidavit of one Joseph Persaud, a “no-fault manager,” the original of which was signed and submitted in 1998 in connection with other proceedings before the Civil Court in another county. Moreover, the affidavit states only that “American Trust Insurance Company does not have any offices in Queens county [and] the sole office for American Trust Insurance is 275 Seventh Avenue, New York, New York 10001” (emphasis added), neither of which factors is relevant to the precise (transacts business) issue presented in this proceeding.
In any event, although defendant does not deny that it issues such policies to residents of Bronx County, it claims via its counsels’ affirmation that this “minimal” contact with other Bronx County residents does not provide a basis for Bronx County venue because it has no office or other presence in Bronx County, and because no insurance policies were provided by defendant to plaintiffs’ assignors in Bronx County. Defendant argues that since the proceedings under consideration do *273 not even arise out of the issuance of an insurance policy in Bronx County, defendant should not be found to have transacted business within, or be deemed a resident of, Bronx County within the meaning of CCA 305. In support of this contention, the defendant relies upon, and asks this court to adopt, the reasoning and holding of a decision rendered in the Civil Court in Bronx County which was recently published in the New York Law Journal. (Quality Med. Healthcare v American Tr. Ins. Co., 182 Misc 2d 991.) In that case, the same defendant asserted, as it does in the proceedings before this court, that the “transacts business” phrase must be given the same meaning as that given to the same phrase in the long-arm jurisdictional provision of CPLR 302 (a) (1),* which, according to defendant, has been “interpreted” to require not just the transaction of business in the County but also that the cause of action arises out of that business.
For the reasons hereinafter set forth, the court finds and concludes that defendant’s reliance upon the long-arm jurisdictional provision is misplaced; that defendant’s reasoning is flawed; that venue is properly placed in Bronx County; and that the court is unable to provide comity to the Quality Med. Healthcare decision (supra).
Discussion
General Principles and Burden of Proof
In the Civil Court of the City of New York, the venue of an action is governed by CCA article 3 which for transitory causes of action, such as those in the proceedings before this court, venue of a proceeding is initially selected by the plaintiff based upon the residence of one of the parties (CCA 301, 305; see, Medicorp v Avis Corp., 122 Misc 2d 813 [1984]). In addition, it is abundantly clear that “unless the balance is strongly in favor of the defendant, the plaintiff’s choice of forum should rarely be disturbed.” (See, Gulf Oil Corp. v Gilbert, 330 US 501, 508 [1947]; Waterways Ltd. v Barclays Bank, 174 AD2d 324, 327 [1st Dept 1991]; Temple v Temple, 97 AD2d 757 [2d Dept 1983]; Suffolk Chiropractic Ctr. v GEICO Ins. Co., 171 Misc 2d 855 [Civ Ct, Queens County 1997].) Moreover, it is settled *274 that upon a motion to change said venue defendant bears the burden to establish that plaintiff’s choice of forum is not appropriate, or that other factors and circumstances require that venue be changed. (Islamic Republic v Pahlavi, 62 NY2d 474, 479, cert denied 469 US 1108 [1985]; Clarke v Ahern Prod. Servs., 181 AD2d 514 [1st Dept 1992]; Bradley v Plaisted, 277 App Div 620 [3d Dept 1951], lv denied 278 App Div 727.)
Comity
The issue here presented is far from settled or sui generis! It has spawned repeated litigation. However, because it has not yet been addressed by an appellate court, the law on this subject is unsettled; and it has resulted in numerous proceedings and divergent decisions in the Civil Court throughout the five counties in the City of New York. These divergent decisions, which are for the most part, unexplained, unreported and unpublished, provide no reliable settled precedent which can serve as a standard for guidance to litigants and their attorneys.
Venue choices and proceedings, unlike those involving the jurisdiction of the court, do not result in the enlargement or impairment of substantive rights or obligations; and the commencement of a proceeding in the New York Civil Court in the wrong venue does not result in the dismissal of the proceeding (CCA 306; Suffolk Chiropractic Ctr. v GEICO Ins. Co., supra). Thus, if the numerous divergent decisions had been consistent and in harmony, this court, even if in disagreement, might be inclined to provide comity to the Quality Med. Healthcare ruling (supra) in order to discourage continued litigation on this issue. Under the doctrine of comity, in an effort to promote such uniformity, courts will often give effect to a judicial decision of a court of co-ordinate jurisdiction, especially when such decision does not enlarge or impair a substantive right or obligation of a party. However, comity is not an imperative! The principle of comity has been best expressed by the United States Supreme Court in Mast, Foos & Co. v Stover Mfg. Co. (177 US 485, 488), where it was explained that: “Comity is not a rule of law, but one of practice, convenience, and expediency. It is something more than mere courtesy, which implies only deference to the opinion of others, since it has a substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question. But its obligation is not imperative * * * Comity persuades; but it does not command * * * It recognizes the fact that the primary duty of *275 every court is to dispose of cases according to the law and the facts; in a word, to decide them right.” Since recognition of the venue ruling in Quality Med. Healthcare (supra) will not result in discouraging repeated litigation on this issue, and since this court is of the opinion that the requirements of CCA 305 (b) have been satisfied and that a venue issue ought not be measured by the same due process standards by which jurisdictional rules are established, this court cannot defer to that ruling; and is constrained to render a decision in accordance with the facts and the law as it views them.
Venue and Jurisdiction
It is axiomatic that the exercise of in personam jurisdiction requires compliance with the Due Process Clause of the Fourteenth Amendment; and that ever since Pennoyer v Neff (95 US 714 [1877]) limits have been placed on the ability of a State court to obtain personal “long-arm” jurisdiction over foreign domiciliaries who are not served with process within its borders. However, as noted by the United States Supreme Court in McGee v International Life Ins. Co. (355 US 220, 222 [1957]), with modern advances in transportation and ease in communication it is now less burdensome for a party to maintain a defense in a foreign jurisdiction; and thus a trend developed “toward expanding the permissible scope of state jurisdiction.” Therefore, over the years, the United States Supreme Court abandoned the restrictive Pennoyer v Neff doctrine, and also “abandoned ‘consent,’ ‘doing business,’ and ‘presence’ as the standard for measuring the extent of state judicial power over such corporations” (McGee v International Life Ins. Co., 355 US, supra, at 222). Eventually, the Court liberalized the standard and formulated the rule that: “ ‘[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend “traditional notions of fair play and substantial justice” ’ ” (McGee v International Life Ins. Co., 355 US, supra, at 222).
In McGee (supra), the Court upheld a remedial California statute which permitted a suit against a foreign corporation which issued an insurance policy to a California resident even though the foreign corporation could not be served within its borders. Consistent with this trend, New York State fashioned its own standards for “long-arm” jurisdiction, and those rules are codified in CPLR article 3. Pursuant to an amendment to *276 CPLR 302 (a) (1), which was enacted in 1979 (L 1979, ch 252, §§ 1, 2), courts of New York State may exercise personal jurisdiction over a nondomiciliary who “transacts any business within the state or contracts anywhere to supply goods or services in the state” (emphasis supplied) if the cause of action against said nondomiciliary arises out of the transaction of such business. In the City of New York an almost identical provision empowers the Civil Court of the City of New York to exercise in personam jurisdiction over nonresidents of the City of New York as to a cause of action which arises out of said business transaction. (CCA 404.) CCA 404 provides in relevant part as follows:
“§ 404 Summons; personal jurisdiction by acts of nonresidents.
“(a) Acts which are the basis of jurisdiction. The court may exercise personal jurisdiction over any non-resident of the city of New York * * * as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state and a resident of the city of New York, if in person or through an agent, he:
“1. transacts any business within the city of New York or contracts anywhere to supply goods or services in the city of New York.” (Emphasis supplied.)
It must be noted, however, that, although there must be a connection between the action sued on and the business transacted for long-arm jurisdictional purposes, no such nexus is necessary where the courts exercise in personam jurisdiction “over foreign defendants who are ‘present’ within the [forum] by virtue of their ‘doing business’ here” (McGowan v Smith, 52 NY2d 268, 272 [1981]). In McGowan (at 272-273), the New York Court of Appeals explained the difference between “doing business” and “transacting business,” as it relates to long-arm jurisdiction and the traditional authority of a court to obtain in personam jurisdiction: “Essential to the maintenance of a suit against a nondomiciliary under CPLR 302 (subd [a], par 1) is the existence of some articulable nexus between the business transacted and the cause of action sued upon [citation omitted]. Indeed, it is this basic requirement that differentiates the long-arm authority conferred by CPLR 302 (subd [a], par 1) from the more traditional authority of the New York courts under CPLR 301 to exercise in personam jurisdiction over foreign defendants who are ‘present’ within the State by virtue of their ‘doing business’ here. Where jurisdiction is predicated upon the provisions of CPLR 301, there is no need to establish a connection *277 between the cause of action in issue and the foreign defendant’s business activities within the State, because the authority of the New York courts is based solely upon the fact that the defendant is ‘engaged in such a continuous and systematic course of “doing business” here as to warrant a finding of its “presence” in this jurisdiction’ [citation omitted]. Where the plaintiff’s proof falls short of establishing such a ‘systematic course of “doing business” ’, however, our statutory scheme permits him to bring the foreign defendant within the power of the New York courts upon a lesser showing of some business contacts within the State only if he demonstrates that his cause of action arose out of those business contacts” (emphasis supplied).
McGowan (supra) made it abundantly clear that it takes far fewer contacts with the forum to establish that a nondomiciliary has “transacted business” within the forum than it does to establish that said nondomiciliary is “doing business” in said forum. In the latter circumstance, the cause of action need not arise out of the business conducted for the court to have in personam jurisdiction over the defendant. In any event, these are the liberal statutory conditions which apply to the jurisdiction. Although some of the terms which are used in the venue statute may have the same meaning as those used in a statute dealing with jurisdiction, the added conditions which are incorporated in the jurisdictional provision do not automatically become subsumed in the venue rule.
For venue, the rules are even more liberally enacted and applied. Venue, the permitted situs of a proceeding, assumes that the court already is possessed with the personal and subject matter jurisdiction. Although jurisdiction requires compliance with constitutional mandates, venue is not so burdened; and it may be geographically located anywhere within the jurisdiction of the court which is deemed appropriate by applicable statute or court rule. (CCA 306-307.)
The New York City Civil Court has its own statutory scheme and its own venue and jurisdictional rules (see, CCA arts 3, 4). These rules are not necessarily governed, as defendant suggests, by interpretations of provisions in the CPLR which deal with the same subject. (Siegel, NY Prac § 116, at 200 [3d ed]; City & Suburban Delivery Sys. v Green’s Cards & Gifts, 167 Misc 2d 283 [Civ Ct, Queens County 1996]; Modern Thermographic Testing v MABSTOA Ins. Co., 141 Misc 2d 617 [Civ Ct, Queens County 1988].) For example, although both the CPLR and CCA each provide generally for venue based on residence *278 for transitory causes of action, CCA article 3, unlike the CPLR, provides a broadened and more liberal definition of residence for corporations. Thus, CCA 305 (b) does not restrict the residence of a corporation, as does CPLR 503 (c), to the place where it has its principal office. CPLR 503 (c) provides that a corporation, for venue purposes, is a resident only of the county in which it maintains its principal office even though it may maintain multiple offices in other counties. Pursuant to CCA 305 (b), however, a corporation, for venue purposes, may be deemed to have more than one residence; and a cause of action may be brought against a corporation in “any county wherein it transacts business, keeps an office, has an agency or is established by law.” (Emphasis supplied; City & Suburban Delivery Sys. v Green's Cards & Gifts, supra.)
In any event, it does not follow, that merely because the same “transacts business” expression is used in both the venue and long-arm jurisdictional statutes, that venue is thereby conditioned upon the same predicates necessary to justify jurisdiction. Although the expression “transacts business” has an identical meaning in both statutes, it does not mean that both statutes require that the cause of action arise out of that business. It is a misleading syllogism fashioned by defendant on this erroneous premise which defendant successfully argued in Quality Med. Healthcare (182 Misc 2d 991, supra); and which defendant now seeks this court to adopt.
The defendant’s misleading syllogism is structured as follows:
1. Major Premise. The expression “transacts business” which appears in both the venue and long-arm jurisdiction statute has the same meaning in both provisions.
2. Minor Premise. That expression has been “interpreted” to require that the claim must arise from the business transacted in order for the court to obtain jurisdiction.
3. Conclusion. Since the same expression is used in the CCA venue rule and since the cause of action herein did not arise out of the issuance of an insurance policy to plaintiffs’ assignors in Bronx County, defendant should not be found to have “transacted business” in Bronx County.
At first blush and without a comparison of CCA 404 with CCA 305 (b), this argument and syllogism appear valid. However, upon a review of those provisions one readily observes that the statutes are not identical and one of them imposes a condition which the other does not.
*279 Although this court agrees with defendant’s major premise that the “transacts business” phrase should have the same meaning in both provisions, the court does not agree with the minor premise that it is this phrase which has been “interpreted” to require a nexus between the cause of action and the business transacted. It is not that phrase which requires the nexus, it is the long-arm statute that expressly mandates it, and each of the cases cited by the defendant (to wit, McGowan v Smith, 52 NY2d 268, supra; Lisec Glastechinische Industrie v Lenhardt Maschinenbau, 173 AD2d 70 [1st Dept 1991]) makes specific reference to the statute when discussing the need for the nexus. Thus, the nexus, upon which rests the defendant’s entire argument, is imposed not by judicial interpretation of the phrase “transacts business,” but by the Legislature in the enactment of the long-arm jurisdictional statutes. The State and the City long-arm statutes (CCA 404; CPLR 302 [a] [1]) each provide in identical language that long-arm jurisdiction will be applied only to “a cause of action arising from any of the acts enumerated in this section.”
The flaw in defendant’s reasoning becomes readily apparent when one reads the cases cited by defendant and then does a side-by-side comparison of the CCA venue provision with the CCA long-arm jurisdictional statute. While both use the phrase “transacts business,” nowhere in the CCA venue statute does the Legislature impose as an added condition, as it expressly does in the long-arm jurisdictional provision, that the cause of action arise out of the transaction of business. The universal maxim, expressio unius est exclusio alterius, is applicable here. This fundamental rule of statutory construction instructs that “where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted and excluded.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 240.) Having omitted the “arising out of the cause of action” condition in the venue statute, this court is mandated to infer that such omission by the Legislature was intentional. (McKinney’s Cons Laws of NY, Book 1, Statutes § 97.) Adoption of defendant’s argument would be tantamount to impermissible judicial legislation. (McKinney’s Cons Laws of NY, Book 1, Statutes § 73.)
In Quality Med. Health Care (supra, at 994), the court there adopted the defendant’s misleading syllogism and granted the defendant’s motion to change venue stating: “[T]he ‘transacts business’ phrase is offset by the corresponding requirement, as *280 explicitly stated in the long-arm statute, that the ‘cause of action must arise from the same act’ that constitutes the required minimal contact to ‘transact business’ within the forum. The CCA venue provision contains this exact language. (See, CCA 305 [b].)” (Emphasis supplied.)
However, as stated before, the CCA venue provision does not contain this exact language! CCA 305 (b) merely states that “[a] corporation * * * shall be deemed a resident of any county wherein it transacts business, keeps an office, has an agency or is established by law.” Neither CCA 305 (b), nor any other CCA venue provision, even implies that, for transitory causes of action, venue is limited to the county where the cause of action arose. On the contrary, CCA 301 expressly provides that for such causes of action venue may be situated “in the county in which one of the parties resides at the commencement thereof.”
Defendant’s Transaction of Business in Bronx County
As previously stated, it is well established that it takes far fewer contacts with a forum to establish that a defendant has “transacted business” than it takes to prove that it is “doing business.” (See, McGowan v Smith, supra; McKee Elec. Co. v Rauland-Borg Corp., 20 NY2d 377 [1967]; Rung v United States Fid. & Guar. Co., 139 AD2d 914 [4th Dept 1988].) For example, in Rung (supra, at 915), the Court found that the defendant transacted business because it “engaged in purposeful activity in New York, by regularly corresponding, by mail or telephone, with * * * plaintiffs’ insurance agent in New York.” Said activity included, as it does in these proceedings, delivering the insurance policy, sending invoices and seeking and collecting premiums.
Based on the allegations and the evidence presented by plaintiffs, and the failure of the defendant to refute or controvert same, it would appear that the defendant has not only “transacted business” in Bronx County, but that it regularly conducts and is “doing business” in Bronx County, as well as throughout the City of New York. Thus the court determines that the said defendant may be deemed a resident of Bronx County pursuant to CCA 305 (b) and that plaintiffs’ choice of forum should not be disturbed.
Irrelevant Issues Raised by Defendant
In what is an apparent effort to distract this court and to have it view plaintiffs’ position unfavorably, defendant alleges that plaintiffs’ law firm has been “flooding one court” with no- *281 fault lawsuits; that the No-Fault Law was designed to remove no-fault disputes from the courts; and that plaintiffs’ counsels’ practice “is diametrically opposed to the purpose of the no-fault law and should be discouraged.” Defendant is wrong on all counts. The New York Court of Appeals has observed that, “[a] legislative objective in enacting the No-Fault Law was to reduce significantly the burden of automobile personal injury litigation on the courts.” (Roggio v Nationwide Mut. Ins. Co., 66 NY2d 260, [1985] [emphasis supplied].) It was never the purpose of that legislation to preclude actions based on contract violations or to discourage insured persons from seeking redress when their insurance carriers unreasonably delay and/or refuse to provide no-fault benefits. On the contrary it was assumed that by providing a “sure and efficient system for obtaining compensation for economic loss suffered as a result of [vehicular] accidents” it would “remove the vast majority of claims arising * * * from the sphere of * * * tort litigation” (see, Walton v Lumbermens Mut. Cas. Co., 88 NY2d 211, 214 [1996] [emphasis supplied]). Obviously, from the so-called flood of cases, it is apparent to this court that for many of the intended beneficiaries of the law, the “system” is not providing the no-fault benefits in the efficient manner contemplated by the statute. In any event, it was never the object of the law to prevent insured persons from enforcing their contractual rights; and this smoke screen issue has absolutely nothing to do with the venue issue presented by these proceedings.
Conclusion
Accordingly, the defendant’s motion to transfer the venue of these proceedings to the County of Kings is denied.

 For some unexplained reason the defendant ignores the more applicable Civil Court Act long-arm statute (i.e., CCA 404) but relies instead upon an analogy with the “transacts business” expression which is used in CPLR 302 (a) (1). In any event, this court agrees that the phrase “transacts business” has the same meaning in each said provision.