OPINION OF THE COURT
Paul A. Victor, J.
Defendant Gregory Surgical Services, LLC (hereinafter Gregory Surgical) moves to dismiss the complaint for lack of personal jurisdiction pursuant to CPLR 302 and 3211.
Facts and Procedural History
In this medical malpractice action, the plaintiff alleges that she sustained severe and permanent injuries including but not limited to polyradiculopathy, spinal stenosis and severed nerves resulting in pain and weakness in her right shoulder, arm and hand as a result of negligent treatment for cervico-thoracic disc disease. She claims, among other things, that these medical errors included acts of omission (failing to order or perform diagnostic tests), and acts of commission (improper administration of cervical facet joint steroid injections). Plaintiff asserts that the injections were negligently administered by defendants Drs. Ladislav Habina and Jose R. Sanchez-Pena at the offices of defendant Gregory Surgical in New Jersey. According to the plaintiff, she was initially treated by Dr. Sanchez-Pena at the Manhattan office of defendant Comprehensive Medical Evaluations, P.C. (Comprehensive Medical) beginning in October 1997. The defendant Dr. Sanchez-Pena, who is the principal of Comprehensive Medical, then referred plaintiff for treatment at the New Jersey offices of Gregory Surgical, and personally participated in the administration of the injections in the New Jersey office. Dr. Sanchez-Pena’s office also arranged for transportation to be provided to plaintiff from her home in New York to Gregory Surgical in New Jersey on at least two occasions. Defendant Gregory Surgical admits in an affidavit by its administrative director that it employs drivers (residents of New Jersey) who regularly transport patients from New York to its New Jersey facility, without charge to the patient, in vehicles leased by an entity known as Comprehensive Rehabilitation of New Jersey, whose relationship to Gregory Surgical and the other defendants in this case is unclear. The certificate of formation of Gregory Surgical, filed with the Secretary of State of New *602 Jersey on June 6, 1997, reflects that it was filed by defendant Dr. Sanchez-Pena, who is also the president of Gregory Surgical.
Defendant Gregory Surgical moves pursuant to CPLR 302 and 3211 to dismiss the complaint on the ground that the court lacks personal jurisdiction over it. Plaintiff contends, on the other hand, that Gregory Surgical is subject to “long-arm” jurisdiction, both under CPLR 302 (a) (1) and (3).
Law Pertaining to Motions to Dismiss
To establish jurisdiction under CPLR 302 (a) (3), plaintiff has the burden of showing that facts “may exist” to establish commission of a tortious act by defendant. (Fantis Foods v Standard Importing Co., 49 NY2d 317, 325 [1980].) On a motion to dismiss based on lack of jurisdiction under the “long-arm” statute, the plaintiff has the burden of proving a basis for the exercise of in personam jurisdiction, but need not plead the jurisdictional allegations. (Ziperman v Frontier Hotel of Las Vegas, 50 AD2d 581 [2d Dept 1975]; Fishman v Pocono Ski Rental, 82 AD2d 906, 907 [2d Dept 1981]; Rung v United States Fid. & Guar. Co., 139 AD2d 914 [4th Dept 1988].) If required, the court may allow discovery (Peterson v Spartan Indus., 33 NY2d 463, 467 [1974] [plaintiff made “sufficient start” indicating that basis of jurisdiction was “not frivolous”]), and take evidence on the issue, keeping in mind that the evidence must be viewed in the light most favorable to the plaintiff. (Armouth Intl. v Haband Co., 277 AD2d 189, 190 [2d Dept 2000]; Hoag v Chancellor, Inc., 246 AD2d 224, 228 [1st Dept 1998].)
Issues Presented
Has plaintiff provided sufficient proof to establish personal jurisdiction over defendant Gregory Surgical, a nondomiciliary, under any of the “long-arm” provisions of CPLR 302?[1] In that regard, has plaintiff established:
*603 “A. That in accordance with CPLR 302 (a) (3) (i) and (ii), the defendant Gregory Surgical ‘committed a tortious act without [New York] State causing injury to [plaintiff] within [New York State]’ and that the defendant either:
“1. Regularly did or solicited business in New York; or
“2. Engaged in any other persistent course of conduct in New York; or
“3. Derived substantial revenue from services rendered in New York; or
Discussion
A. Commission of Tortious Act Outside New York — CPLR 302 (a) (3) Causing Injury Within New York
For jurisdiction to exist under CPLR 302 (a) (3), the commission of a tortious act outside the state must, among other things, result in “causing injury to person or property within the state * * * .” The parties here do not even present the “situs of injury” as a contested issue despite the fact that there is a substantial body of case law which indicates that in a tort action, the injury location for section 302 (a) (3) long-arm jurisdictional purposes is the situs of the originating and precipitating tort, and not the place in which “resultant” damage occurs. (Carte v Parkoff, 152 AD2d 615 [2d Dept 1989]; Hermann v Sharon Hosp., 135 AD2d 682 [2d Dept 1987]; Kramer v Hotel Los Monteros, 57 AD2d 756 [1st Dept 1977]; see also, Ingraham v Carroll, 90 NY2d 592, 604 [1997] [dissenting op].) It is apparent, however, from the circumstances presented in the case at bar, as well as from the manner in which this “situs of injury” issue was treated by the Court of Appeals in Ingraham (supra), that the issue should not be ignored by this court.
*604 In Ingraham, the Court of Appeals was presented with this jurisdictional issue in a wrongful death action arising out of malpractice allegedly committed by a defendant physician, who examined plaintiff (a New York resident) in Vermont following a referral from her New York physicians. As stated by the Court, “[t]he gravamen of [plaintiff’s] complaint against [defendant] is that he negligently failed to recognize the serious nature of his wife’s condition at an early stage and, as a result, made recommendations to her primary physicians against procedures that would have led to an early diagnosis of the cancer while it was still in a treatable stage” (90 NY2d, supra at 595). Clearly these alleged tortious acts of omission and commission (i.e., failure to make diagnosis and improper recommendations) occurred in Vermont; and it was undisputed that the defendant physician resided and practiced only in Vermont, and had not solicited business in New York. Although all the requirements under section 302 (a) (3), including the injury situs issue, were properly preserved for review upon appeal, it is significant to note that the Court of Appeals purposely curtailed the scope of its review by rendering the “situs of injury” issue academic.[2] The majority of the Court expressly “[a]ssum[ed], without deciding, that the alleged tortious conduct in Vermont caused injury within New York” (90 NY2d, supra at 597 [emphasis added]), and then held that plaintiff had not obtained jurisdiction over the defendant under section 302 (a) (3) because plaintiff was unable to demonstrate facts sufficient to show compliance with the additional conditions which provide a sufficient nexus to New York to warrant the assertion of jurisdiction under either clause (i) or (ii) of section 302 (a) (3). In a vigorous dissent, Judge Bellacosa, joined by Judge Ciparick (at 600), accepted the “majority’s prudential avoidance of the place-of-injury issue,” but departed from what was perceived as the majority’s narrow and restrictive interpretation of the other requirements of clauses (i) and (ii).
*605 The present case, therefore, squarely presents the issue left “open” and “undecided” in Ingraham, i.e., whether in a medical malpractice case the situs of the injury necessarily corresponds with the situs of the tort for CPLR 302 (a) (3) purposes. However, the decisions of the First and Second Departments, in Carte, Hermann and Kramer (supra), which hold that only the situs of the originating and precipitating tort qualifies as the place of injury, present a possible impediment to a meaningful review by this court unless they can be considered so “neutralized” by Ingraham that inferior courts may make a de novo review and determination. The dissent in Ingraham appears to so indicate:
“The Court’s avoidance of ruling on the conclusion of both lower courts that no injury occurred in New York is prudentially useful here because, in effect, we at least neutralize that negative finding by those courts. To be sure, the Court does not substitute the affirmative finding that some injury did occur in New York. Instead, a detour is taken around that question to await a more propitious and better assembled case, that may be otherwise determinative of outcome and contribute to the dispositional analysis and developing jurisprudence.
“In our view it is useful to note in passing, nonetheless, that the locus of injury for tort and long-arm jurisdictional purposes is more of an open question than the rigid response in law up to now has indicated, to wit, that injury is only at the situs of the originating and precipitating tortious wrong (see, e.g., McGowan v Smith, 52 NY2d 268, supra; Carte v Parkoff, 152 AD2d 615; Hermann v Sharon Hosp., 135 AD 2d 682; Kramer v Hotel Los Mon-teros, 57 AD2d 756). That standpat answer would not reflect a progressive reassessment as to where the law is or ought to be, based on this flexible springboard of long-arm jurisdiction. No less where differing, continuing or final injuries may ultimately be determined to be sited for purposes of pain and suffering and wrongful death causes of action.” (90 NY2d at 604-605 [emphasis added].)
Since the issue has been declared to be an “open” one, are inferior courts free to make a “progressive reassessment,” or are they still constrained to follow the reasoning of those courts whose “rigid response” has clearly been questioned in Ingraham?
*606 Is Questionable Precedent Binding?
The general rule is that inferior courts must follow applicable decisions of the Appellate Division in its Department. Even in the absence of a relevant decision in its own Department, inferior courts are bound to follow applicable decisions in another Department of the Appellate Division. This concept is founded upon the time-honored doctrine of stare decisis and the fact that there is in New York State but one Appellate Division, albeit divided into four Departments. (Mountain View Coach Lines v Storms, 102 AD2d 663 [2d Dept 1984]; People v Brisotti, 169 Misc 2d 672 [App Term, 1st Dept 1996]; People v McMurty, 141 Misc 2d 510, affd 174 AD2d 988, lv denied 78 NY2d 1078 [1991]; Josephson v Josephson, 121 Misc 2d 572 [Sup Ct, NY County 1983].)
It is equally fundamental that where the Court of Appeals has not spoken and there is no applicable Appellate Division decision in its own Department, conflicting decisions in the other Departments are not binding on an inferior court; and it is then free to fashion a decision which it deems to be appropriate and consistent with the overall objectives sought to be achieved by the applicable statute. (See Brown v Village of Albion, 128 Misc 2d 586.)
The case before this court, however, presents a hybrid situation. Is a trial court free to fashion a decision which it deems consistent with the statutory scheme, where, as stated by the dissent in Ingraham, the issue is one which has been left “open” by the New York Court of Appeals under circumstances which cast a serious doubt on prior, controlling appellate precedent? It appears reasonable to assume so. In any event, the issue is intriguing, and makes worthy at least a review of that prior precedent.
Two theories underlie those prior Appellate Division cases which assert that, for section 302 (a) (3) purposes, an “injury” occurs only at the situs of the commission of the tort. In Kramer, the earliest of the decisions, it was reasoned first, that the statute “looks to the imparting of the original injury within the State of New York and not resultant damage,” and second, that “[t]o hold otherwise would open a veritable Pandora’s box of litigation subjecting every conceivable prospective defendant involved in an accident with a New York domiciliary to defend actions brought against them in the State of New York.” (Kramer v Hotel Los Monteros, 57 AD2d, supra at 757.) The Carte and Hermann cases each cite Kramer in support of this same conclusion, and they also cite to the New York Court of *607 Appeals decision in McGowan v Smith (52 NY2d 268 [1981]) as additional authority for this rationale. However, not only does this reasoning appear inconsistent with legislative intent, it is not in any way supported by the McGowan decision.
In McGowan the Court of Appeals never made a finding, holding, or even a suggestion that the long-arm statute or public policy mandates such a restrictive interpretation of the statute. The Court in McGowan merely noted that plaintiff never claimed to have sustained injury in New York. The McGowan panel observed that:
“Under [CPLR 302 (3)] a nondomiciliary who ‘commits a tortious act without the state causing injury * * * within the state’ may be brought before a New York court to answer for his conduct if he has had sufficient economic contact with the State or an active interest in interstate or international commerce coupled with a reasonable expectation that the tortious conduct in question could have consequences within the State. Although most of the criteria set forth in this statute have been satisfied here, it is obvious that the provision is inapplicable, since there has been no allegation that the tortious conduct in question caused injury in New York. Indeed the allegations in the pleadings clearly indicate that the situs of the injury was Ontario, Canada, where the accident involving the purportedly defective fondue pot occurred” (52 NY2d, supra at 273-274).
The Court of Appeals is a court of limited jurisdiction, and, except in limited circumstances, is constitutionally confined to a review of questions of law and is precluded from a review of questions of fact. (Karger, Powers of the New York Court of Appeals §2 [b], at 10 [Scope of Review] [3d ed 1997].) In McGowan, although the “situs of injury” issue was discussed as a question of law in the Appellate Division, the Court of Appeals did not enmesh itself in this legal issue since the issue was apparently rendered moot by plaintiff’s “allegations in the pleadings [which] clearly indicate [d] that the situs of the injury was Ontario Canada * * * .” Since these facts were apparently[3] binding in the Court of Appeals any further comment on the legal issue would have violated the general rule which “forbids courts to pass on academic, hypothetical, moot, or otherwise *608 abstract questions” (Hearst Corp. v Clyne, 50 NY2d, supra at 713).
Neither of the grounds set forth in Kramer appears to be supported by the statute or by the rationale of the original authors who recommended this remedial “gap closing” amendment as a response to what was perceived as an unduly restrictive interpretation of CPLR 302 (a) (2) by the Court of Appeals in Feathers v McLucas (15 NY2d 443). In Feathers, plaintiff was injured as a result of an explosion in New York of a propane tank which had been manufactured outside of New York by a nondomiciliary corporation. The Court held that CPLR 302 (a) (2) does not authorize jurisdiction over a nonresident who causes tortious consequences in New York as a result of a negligent act or omission committed outside New York. The majority in Feathers stated that the plain meaning of the phrase “commits a tortious act within the state” requires that defendant’s negligent act or omission occur within the state. In its proposal to the Legislature for the adoption of CPLR 302 (a) (3) the Judicial Conference stated, among other things, that “[i]n view of [the] serious gap in the coverage afforded by CPLR 302(a) (2) the Judicial Conference believes that an amendment is required * * * ” (Judicial Conference Report on CPLR, 1966 McKinney’s Session Laws of NY, at 2788). In its Memorandum which accompanied the Report and Proposed Amendment, the Judicial Conference stated:
“The Court of Appeals in Feathers v. McLucas, 15 N.Y.2d 443 construed the language of CPLR 302(a) (2) so that it did not authorize jurisdiction over a non-resident whose act occurs out of the state but causes injury within the state. This interpretation was contrary to legislative intent in enacting the section, and the Court of Appeals indicated that an amendment would be necessary to effectuate such intent.
“To accomplish this aim the proposed legislation would insert a new paragraph (3) in CPLR 302(a) which would broaden New York’s long-arm jurisdiction so as to include non-residents who cause tortious injury in the state by an act or omission without the state. * * *

“This proposed amendment is broad enough to protect New York residents yet not so broad, even though constitutionally feasible, as to burden unfairly non-residents whose connection with the 
*609

“For the foregoing reasons, it is recommended that this bill be enacted into law.” (Mem of Judicial Conference, 1966 McKinney’s Session Laws of NY, at 2911 [emphasis supplied]; see also Judicial Conference Report, 1966 McKinney’s Session Laws, supra.)
Clearly this remedial legislation was intended to protect and broaden the rights of injured New York residents, and thus should be “liberally construed, to spread [its] beneficial result as widely as possible * * * as to give effect to the intention of the lawmakers, that is, to effect or carry out the reforms intended and to promote justice, particularly where the statute [is] designed to correct imperfections in a prior law” (McKinney’s Cons Laws of NY, Book 1, Statutes § 321 [Remedial Statutes]).
In particular, this court notes that there is no reference in the statute to “original injury” or “resultant damage,” and nowhere in the Memorandum or in the full Report of the Judicial Conference is it posited (as stated in Kramer) that this remedial statute “looks to the imparting of the original injury within the State of New York and not resultant damage.”
Kramer’s restrictive construction very nearly confines the statute’s application in tort cases to products liability cases, such as Feathers, where the originating event which causes the injury occurs only after the out of state defectively made product enters New York. Almost every other tort, especially acts of commission in malpractice, would be excluded from the reach of this long-arm provision because it can be argued that the “originating injury,” no matter how slight, almost always occurs out of state and simultaneously with the commission of the tort. Of course, it is not impossible to conceptualize specific fact patterns which could provide an exception to the Kramer rule as it relates to malpractice. For example, if a physician in a foreign state prescribes a medication which is contraindicated based on plaintiffs medical condition and the plaintiff returns to New York, takes the medication for the first time and then suffers injury, the “situs of injury” condition of section 302 (a) (3) should be satisfied. However, if a physician performs an act negligently in a foreign state so that an infection later *610 “manifests” itself in New York, the Kramer rule would seem to preclude the reach of the long-arm statute. In Kramer, the plaintiff received a dog bite in Spain but, “its most severe medical result, septicemia, did not manifest itself until the plaintiff * * * returned to New York” (57 AD2d 756, 757 [emphasis added]).
Should acts of omission in malpractice be treated differently? In Ingraham (which involved acts of omission and commission committed by a physician in a foreign state), the majority did not adopt the Kramer rationale and chose instead to leave the issue open. In Ingraham, the physician failed to make a proper diagnosis and then made erroneous recommendations to plaintiffs New York doctor which thus allowed plaintiffs cancer to progress in New York to a point where it became untreatable. Did the Ingraham injury “originate” with the torts of omission and/or commission which were committed in the foreign state? Or did plaintiffs injury originate when the cancer continued to develop and become untreatable in New York? In any event, was it really the intention of the Legislature to have litigants and the judiciary so parse this legislation, or was it the intention of the Legislature to broaden the jurisdictional reach of a New York resident who suffers here as a result of a tort committed outside New York? Would a liberal construction of the situs of injury provision, as feared in Kramer, really open the floodgates to a plethora óf actions in New York, and thereby “subject * * * every conceivable prospective [nonresident] defendant involved in an accident with a New York domiciliary to defend actions brought against them in New York”? (57 AD2d, supra at 757.) This court feels that Kramer’s fear is not well-founded.
Long-Arm Statute With Safeguards
It would appear that Kramer’s concern about “opening a Pandora’s box of litigation” for nonresidents was already addressed by the Legislature when it built in the conditions contained in clauses (i) and (ii) of section 302 (a) (3). The authors of this legislation characterized this statute as “broad enough to protect New York residents yet not so broad, even though constitutionally feasible, as to burden unfairly non-residents” (Mem of Judicial Conference, supra at 2911; Judicial Conference Report, supra at 2788-2790). Thus, the reach of this long-arm provision would extend not to “every conceivable prospective [nonresident]” but only those shown to have such a substantial nexus to New York such that it would not be unfair to require them to defend a tort action in New York. Therefore, *611 pursuant to clauses (i) and (ii) of section 302 (a) (3), a nondomi-ciliary is not subjected to the jurisdiction of New York unless said nondomiciliary also either regularly engages in sufficient other conduct involving New York State, and/or foresees that the tortious act may have consequences in New York and also derives substantial revenue from interstate or international commerce. It should be noted that clause (i) has three prongs which are set forth, in the alternative. That clause describes three types of conduct, any one of which would provide the sufficient nexus with New York under this long-arm provision (i.e., regularly does or solicits business in New York, or engages in any other persistent course of conduct in New York, or derives substantial revenue in New York). However, clause (ii), which is alternative to clause (i), sets forth two conditions (i.e., expects or should reasonably expect the tortious act to have consequences in New York and derives substantial revenue from interstate or international commerce) each of which must be met in order to obtain long-arm jurisdiction under this provision. Clearly the safeguards contained in CPLR 302 (a) (3) do not permit the opening of any “floodgates”!
Full Implementation of Legislative Concern
Of course, if it is deemed necessary to further shield nonresident tortfeasors from what may be perceived to be the “Pandora’s box of litigation,” the courts can further implement the concern of the Legislature by a “conservative” application of the conditions set forth in clauses (i) and (ii). In other words, by providing a liberal construction to the “situs of injury” provision and a conservative construction to the nonresident conduct conditions, both concerns of the Legislature (i.e., to broaden the rights of New York residents and to not unfairly subject nonresidents to litigate here) would be fully implemented. However, even with a conservative application of these conditions, it would appear that defendant clearly falls within at least one of the conditions which subjects it to long-arm jurisdiction.
Defendant’s Persistent Course of Conduct
CPLR 302 (a) (3) (i) requires a showing that the defendant “regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state * ** * « (Emphasis added.) Since these prongs of clause (i) are set forth in the alternative, and since the defendant has so clearly engaged in a “persistent course of conduct in New York,” it is unnecessary to engage in an analysis of the applicability *612 of the other possible conditions although the “regularly solicits business in New York” condition may also ultimately be shown to have been satisfied. The present defendant did not simply accept referrals from unaffiliated New York physicians, as did the physician in Ingraham (who was held not to have met any of the criteria). In contrast, Gregory Surgical’s agents actively entered the state and regularly ferried referral patients to its New Jersey facility — referrals from a physician who was a principal of, as well as acting as an agent of, the defendant. It may be reasonably assumed that this free shuttle service served the obvious purpose of “soliciting” business, since many of the referral patients might not have been willing to travel to defendant’s office if this perk was not provided. Although this conduct might not pass muster with a conservative application under the first prong of this clause (i.e., “regularly solicits business in New York”) it clearly qualifies as a “persistent course of conduct in New York.” Under these circumstances it does not appear unfair to subject the defendant Gregory Surgical to the jurisdiction of the courts of this state under CPLR 302 (a) (3) (i).
B. Transaction of Business in New York — CPLR 302 (a) (1)
It is necessary at the outset to distinguish the concept of “the transaction of business” from the concept of “doing business.” The distinction was explained in the seminal case of McGowan v Smith (52 NY2d 268, 272-273 [1981]):
“Essential to the maintenance of a suit against a nondomiciliary under CPLR 302 (subd [a], par 1) is the existence of some articulable nexus between the business transacted and the cause of action sued upon (but cf. Singer v Walker, 15 NY2d 443). Indeed, it is this basic requirement that differentiates the long-arm authority conferred by CPLR 302 (subd [a], par 1) from the more traditional authority of the New York courts under CPLR 301 to exercise in personam jurisdiction over foreign defendants ivho are ‘present’ within the State by virtue of their ‘doing business’ here. Where jurisdiction is predicated upon the provisions of CPLR 301, there is no need to establish a connection between the cause of action in issue and the foreign defendant’s business activities within the State, because the authority of the New York courts is based solely upon the fact that the defendant is ‘engaged in such a continuous and systematic course of “doing business” ’ here as to warrant a finding of its “presence” *613 in this jurisdiction’ (Simonson v International Bank, 14 NY2d 281, 285, supra; accord Frummer v Hilton Hotels Int., 19 NY2d 533). Where the plaintiffs proof falls short of establishing such a ‘systematic course of “doing business” ’ however; our statutory scheme permits him to bring the foreign defendant within the power of the New York courts upon a lesser showing of some business contacts within the State only if he demonstrates that his cause of action arose out of those business contacts.” (Emphasis added.)
Subsequent court decisions have observed that, “McGowan (supra) made it abundantly clear that it takes far fewer contacts with the forum to establish that a nondomiciliary has ‘transacted business’ within the forum than it does to establish that said nondomiciliary is ‘doing business’ in said forum.” (Mingmen Acupuncture Servs. v American Tr. Ins. Co., 183 Misc 2d 270, 277 [Civ Ct, Nov. 19, 1999].) In that regard it has been held that “the clause, ‘transacts any business within the state,’ as used in CPLR 302(a) (1), covers a wide range of activities, and includes a non-resident who does a single purposeful act in New York for a commercial or business purpose.” (Judicial Conference Report on CPLR, 1966 McKinney’s Session Laws, at 2785 [emphasis added]; Longines-Wittnauer Watch Co. v Barnes & Reinecke, Feathers v McLucas and Singer v Walker, 15 NY2d 443 [1965].) In Longines (supra), the Court said that the actions of defendant were “assuredly adequate to meet the liberal statutory criteria” and noted further that “a single transaction in New York, out of which the cause of action has arisen, may satisfy the transaction of business provision” (15 NY2d, supra at 456-457). Defendant Gregory Surgical argues that it is a New Jersey company which is not doing business in New York and that the complaint should, in any event, be dismissed since it contains no allegations which support a jurisdictional basis. It claims further that it was not “doing business” in New York because “it has no offices in New York, derives no income from New York, has no employees in New York working on its behalf, does not advertise in New York nor does it own any real property in New York.”
As noted above, clearly there is no requirement in New York that a complaint alleges a basis for personal jurisdiction (Fish-man v Pocono Ski Rental, supra). It is, in any event, evident that the “doing business” argument is not germane, as plaintiff does not rely on the “doing business” standard. Therefore, this *614 court will not engage in an inquiry as to whether the defendant was “doing business” in New York, other than to observe that the plethora of defendant’s contacts with New York might indeed meet even that more rigorous standard.
CPLR 302 (a) (1) permits the exercise of long-arm jurisdiction when the defendant “transacts any business within the state or contracts anywhere to supply goods or services in the state.” “Although the statute [CPLR 302 (a) (1)] is typically invoked in cases involving contractual liability, it also has application in tort actions.” (Lebel v Tello, 272 AD2d 103, 104 [1st Dept 2000].) The transaction of business under CPLR 302 (a) (1) confers jurisdiction only if the cause of action arises from or has an “articulable nexus” to the transaction of business within the state (McGowan v Smith, 52 NY2d 268 [1981]). As the Appellate Division, First Department, stated:
“Pursuant to CPLR 302 (a) (1), personal jurisdiction may be obtained over a nondomiciliary ‘who in person or through an agent * * * transacts any business within the state or contracts anywhere to supply goods or services in the state’. In order to obtain jurisdiction under this statute, the following conditions must be met: (1) the defendant must transact business in the State; and (2) the cause of action must be directly related to, and arise from, the business so transacted.” (Storch v Vigneau, 162 AD2d 241, 242 [1st Dept 1990] [emphasis supplied].)
The “transacting business” standard has also been applied to establish personal jurisdiction in medical malpractice cases, (McLenithan v Bennington Community Health Plan, 223 AD2d 777 [3d Dept 1996], lv dismissed 88 NY2d 1017 [1996] [act of medical malpractice could satisfy the CPLR 302 (a) (1) threshold requirement].)
In McLenithan,[4] a Vermont physician rendered treatment in Vermont to a New York infant. The infant received health benefits from defendant Capital Area Community Health Plan, Inc. (CHP), a New York-based health maintenance organization. The physician had “contracted” with CHP to *615 provide medical care and treatment to CHP’s subscribers, who were largely New York residents. In view of the fact that the physician rendered treatment to the infant in accordance with the CHP contract, “and because [the physician’s] entry into New York’s service economy via the CHP contract was purposeful and significant” (at 778), the Court found that the physician was subject to jurisdiction under CPLR 302 (a) (1). “Requiring him to defend himself in New York will not offend due process because, by actively seeking New York residents as patients, he should have reasonably expected that he would be required to defend his actions here.” (Id. at 778-779 [citation omitted].)[5]
Defendant Gregory Surgical, unlike the McLenithan defendant, was not shown to have entered into any written contract to provide medical services to residents of the State of New York. Nevertheless, the record contains a sufficient factual predicate for this court to conclude that defendant Gregory Surgical “transacted business” within New York State, based upon: (1) the transportation provided to New York residents, and (2) the conduct of Dr. Sanchez-Pena, who was both the referring and treating physician as well as simultaneously a principal of Gregory Surgical and Comprehensive Medical. In this latter regard, despite the absence of a clearly defined contractual agreement between these two companies, it defies both logic and common sense, as defendant now urges, to treat the referral by Dr. Sanchez-Pena, a principal or officer of both companies, as the referral of a disinterested third party with whom there was no “contract.”
The key inquiry under this section is whether the Gregory Surgical purposefully availed itself of the benefits of regularly dealing with New York’s residents, albeit in New Jersey (Parke-Bernet Galleries v Franklyn, 26 NY2d 13, 19 [1970]); and the activities of an agent in this jurisdiction may provide the requisite basis to find the transaction of business in New York for this purpose (Insurance Co. of State of Pa. v CIGNA Prop. & Cas. Ins. Co., 162 AD2d 390 [1st Dept 1990] [“transaction of business” standard satisfied when salaried director of defen *616 dant attended at least three meetings in New York with the insured’s representatives]). Since Dr. Sanchez-Pena is an officer of Gregory Surgical, and thus an agent of that defendant, the referral itself may be construed to be the transaction of business in New York by an agent since he acted “for the benefit of, and with the knowledge and consent of’ Gregory Surgical. (Grove Press v Angleton, 649 F2d 121, 122 [2d Cir 1981].)
The referral of the plaintiff for treatment in New Jersey was accomplished, in addition, by the entry into New York of admitted employees of Gregory Surgical for the explicit purpose of transporting patients and thereby generating revenues at the New Jersey facility. The fact that no fee was charged for the provision of the transportation is inconsequential. The regular entry into New York State by Gregory Surgical in order to transport patients referred by Dr. Sanchez-Pena to New Jersey constituted a form of solicitation, and is a sufficient “transaction of business” to confer long-arm jurisdiction. Certainly, the transaction of such business in New York had a substantial nexus with the causes of action asserted by the plaintiff since the alleged negligent administration of medical services in New Jersey was directly attributable to the referral and was facilitated by the provision of free transportation to the plaintiff. Moreover, although proof of a single transaction in New York would satisfy the statutory requirement (LonginesWittnauer Watch Co. v Barnes & Reinecke, supra), evidence has been submitted by the plaintiff that the provision of transportation to patients like the plaintiff was a regular, ongoing activity.
Conclusion
The questionable rationale of Kramer and its progeny is no longer binding on this court and therefore the court denies defendant’s motion and holds that jurisdiction had been acquired under CPLR 302 (a) (3). The motion is also denied on the additional ground that defendant’s relationship with New York satisfies the “transaction of business” requirements of CPLR 302 (a) (1). Moreover, the exercise of jurisdiction comports with due process and promotes justice. (LaMarea v Pak-Mor Mfg. Co., 95 NY2d 210 [2000].)

. CPLR 302, the so-called “long-arm” statute, provides, as is here relevant:
“(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
“1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
“2. * * * or
“3. commits a tortious act without the state causing injury to person or property within the state, * * * , if he
*603 “(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
“(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; * * * .”

. By ruling that none of the conditions set forth in clauses (i) and (ii) of CPLR 302 (a) (3) had been satisfied, the Court of Appeals made it unnecessary to reach the “situs of injury” issue and therefore rendered it moot. “It is a fundamental principle of our jurisprudence that the power of a court to declare the law only arises out of, and is limited to, determining the rights of persons which are actually controverted in a particular case pending before the tribunal (Matter of State Indus. Commn., 224 NY 13, 16; California v San Pablo & Tulare R.R., 149 US 308, 314-315). This principle, which forbids courts to pass on academic, hypothetical, moot, or otherwise abstract questions, is founded both in constitutional separation-of-powers doctrine, and in methodological strictures which inhere in the decisional process of a common-law judiciary.” (Matter of Hearst Corp. v Clyne, 50 NY2d 707, 713-714 [1980].)

. Perhaps the Court of Appeals in McGowan adopted this observation as a method to “prudentially avoid” this complex issue.

. This decision predates the decision rendered by the Court of Appeals in Ingraham v Carroll, which is discussed infra. It should be noted that the McLenithan case was decided under CPLR 302 (a) (1) (transaction of business), and that the Court of Appeals did not consider this ground in Ingraham, except to observe that there was no showing in Ingraham of the transaction of any business within New York.

.' In Pomerantz v Wolfin (236 AD2d 379 [2d Dept 1997]), the Second Department held that an Ohio laboratory which analyzed tissue samples in Ohio and sent the results back to New York physicians was subject to long-arm jurisdiction pursuant to CPLR 302 (a) (1). That case did not elaborate on the exact nature of the laboratory’s New York contacts, or the relationship between the laboratory or the New York health care providers who sent samples to it for analysis.