Roger LEVANS, Plaintiff,

v.

DELTA AIRLINES, INC., and Roraima
Airways Inc., Defendants.

No. 12–cv–00773 (NG)(VMS).

United States District Court,
E.D. New York.

Dec. 23, 2013.

Michael J. Borrelli, Michelle F. Hagler, Borrelli & Associates, P.C., Carle Place, NY, Anthony Patrick Malecki, Law Offices of Borrelli & Associates, Ian Sully

Henderson, Borrelli & Associates, Great Neck, NY, Guy William Germano, Germano & Cahill, P.C., Holbrook, NY, for Plaintiff.

Michael Bojbasa, Michael J. Crowley, Connell Foley LLP, New York, NY, Devindra Ramesh Tiwari Kissoon, London House Chambers, Hempstead, NY, for Defendants.

## OPINION & ORDER

GERSHON, District Judge:

Invoking this court's diversity jurisdiction, plaintiff Roger Levans brings this action against defendants Delta Airlines, Inc. ("Delta") and Roraima Airways, Inc. ("Roraima") for negligence. Roraima moves to dismiss Levans's amended complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction over it and on the grounds that venue is improper, the forum is inconvenient, and plaintiff has failed to name indispensable parties.

**FACTS**

In opposing the motion, plaintiff relies upon the allegations of the amended complaint as well as an affirmation by his attorney and exhibits annexed thereto, including certain agreements between Delta and Roraima.

Delta is an airline that is incorporated in Delaware and headquartered in Atlanta, Georgia. Roraima, a foreign corporation that is headquartered in Georgetown, Guyana, maintained two contracts with Delta regarding services that Roraima provided to Delta at Cheddi Jagan International Airport in Timehri, Guyana ("Cheddi"): (1) a Standard Ground Handling Agreement and (2) an Agreement for Airport Security Services (collectively, the "Agreements").[1]

---

1. Each party submitted an unexecuted copy of the Agreement for Airport Security Services. *See* Affidavit of Gerald Gouveia, sworn May 15, 2013 (ECF No. 44–1 ("Gouveia

Key provisions of the Agreements specify Guyana as the forum for disputes and Guyanese law as the choice of law governing disputes. In one agreement, Roraima agrees that its personnel will comply with Transportation Security Administration ("TSA"), Federal Aviation Administration ("FAA"), and other applicable United States laws, regulations, and rules.[2]

Levans, a resident of Queens, New York, arrived at Cheddi on December 29, 2010 with a ticket on a Delta flight to John F. Kennedy International Airport in New York ("JFK"). He checked three pieces of luggage, which were inspected at Cheddi by Delta and/or Roraima personnel.[3] At that time, Levans's suitcases were locked, and he had the only key. Delta and/or Roraima took Levans's bags after they were cleared for transport.

When Levans landed at JFK, he collected his suitcases and proceeded to customs. He did not notice anything was amiss, but when a U.S. customs agent scanned Levans's luggage, the agent detected something on the scan. Security immediately opened Levans's suitcase. Inside, there was a black plastic bag containing what was later determined to be cocaine. Around this time, Levans observed that his suitcase's lock had been removed and a ribbon had been tied onto the handle.

Levans was arrested, searched, and detained for approximately twelve hours. As a result of the arrest, he lost his job and suffered negative publicity. After a nearly three-month investigation, the federal prosecutor determined that Levans's luggage had been tampered with, and the charges against him were dropped.

Upon a fair reading of the amended complaint, Levans alleges that Delta's and/or Roraima's own employees or unknown third parties slipped cocaine into his suitcase. In opposing the present motion, at one point, Levans squarely accuses Roraima's personnel. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, June 11, 2013 (ECF No. 45–1 ("Opp. Mem.")), at 17 ("Assuming the allegations of the Complaint to be true, Roraima, through its employees, inserted two bricks of cocaine into Plaintiff's luggage for the purposes of smuggling it into the New York City area."). In other instances, however, Levans argues that the cocaine was "planted into his luggage at some point during the handling of his luggage in route from Guyana to New York City" (*id.* at 13) and that "smuggling operations were occurring under [Roraima's] watch" (*id.* at 14).

Whether Roraima employees planted the cocaine or negligently allowed someone

5/15/13 Aff.")), Ex. B, at 9; Affirmation of Anthony P. Malecki, affirmed June 11, 2013 (ECF No. 45 ("Malecki 6/11/13 Affirmation")), Ex. 3, at 9. But they do not dispute that the Agreement for Airport Security Services was agreed to and valid, and that the version provided correctly sets forth the terms of the agreement.

2. Nothing in the amended complaint or the Agreements suggests that Roraima, identified by plaintiff as a Guyanese company that provided services on the ground in Guyana, is anything but a local business. Roraima filed an affidavit stating it is a "small family-owned Guyanese corporation" "existing and operating solely in ... Guyana"; it "has no other

agreements with Delta or any other U.S.-based airline or company, or at all"; and it "ha[s] no staff outside of Guyana." Gouveia 5/15/13 Aff. ¶¶ 5, 8, 11. Levans has not contested Roraima's assertions, and, in his opposition to the motion, he relies exclusively on Roraima's relationship with Delta and that some of the passengers' suitcases were destined for New York.

3. Levans alleges that the suitcases were "scanned and secured by Delta personnel, its agents and/or employees, including but [not] limited to Roraima personnel ...." Amended Complaint ¶ 10.

else to do so, Levans at least implicitly alleges that the cocaine was placed in his suitcase *in Guyana*. *See id.* at 12 ("As a direct result of Delta entering into these contracts to outsource their luggage handling in Guyana, Plaintiff's luggage was tampered with through the insertion of two bricks of cocaine therein."); *id.* at 13–14 ("[T]he circumstances surrounding the smuggling of cocaine from Guyana to JFK through flights administered by these Defendants is not an isolated incident."). Plaintiff apparently argues that, because this act transpired on Roraima's watch, Roraima was, by definition, negligent in handling Levans's baggage.

Based on the events described above, Levans filed suit against Delta. Subsequently, Levans amended his complaint to add Roraima as a defendant, bringing negligence claims against both companies.

## PERSONAL JURISDICTION

■ Where, as here, a court has not "conduct[ed] a full-blown evidentiary hearing on the motion [to dismiss for lack of personal jurisdiction], the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981); *O'Mahoney v. Susser*, 531 Fed. Appx. 39, 41 (2d Cir.2013). A plaintiff bears the burden of establishing the court's personal jurisdiction over a particular defendant. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994). While all pleadings and affidavits must be construed in the light most favorable to the plaintiff, *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir.2001), a court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir.1998) (internal quotations omitted).

■ Where an applicable federal statute does not provide for national service of process, whether an out-of-state defendant is amenable to suit in a federal district court is determined by the law of the state in which the district court sits. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir.2004). Accordingly, New York law determines whether personal jurisdiction is proper in this case.

Levans argues that Roraima is subject to the personal jurisdiction of this court pursuant to New York's long-arm statute, specifically CPLR § 302(a)(1) or (3).

### A. Section 302(a)(1)

■ Under § 302(a)(1), a court may exercise personal jurisdiction "over any non-domiciliary . . . who in person or through an agent" either "transacts any business within the state" or "contracts anywhere to supply goods or services in the state." Under either prong of § 302(a)(1), the claim asserted must arise from that business activity. *See Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103–06 (2d Cir.2006) (discussing "arising under" requirement in connection with transacts business clause); *UTC Fire & Sec. Ams. Corp., Inc. v. NCS Power, Inc.*, 844 F.Supp.2d 366, 373 (S.D.N.Y. 2012) (discussing "arising under" requirement in connection with contracts to supply goods or services clause).

■ The Second Circuit has explained that this provision is "typically invoked for a cause of action against a defendant who breaches a contract with plaintiff, or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York." *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir.1983). These circumstances are not present here.

### 1. Section 302(a)(1)—Transacts Business Clause

 When analyzing jurisdiction under the transacts business clause, courts examine "the totality of the defendant's activities within the forum" in order to determine if the defendant's "transacted business" can be considered purposeful. *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortg. Investors,* 510 F.2d 870, 873 (2d Cir.1975) (internal quotations omitted). "Purposeful activity" is " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 246 (2d Cir.2007) (quoting *McKee Elec. Co. v. Rauland–Borg Corp.,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967)).

 To show that Roraima transacted business in New York, plaintiff relies primarily on the relationship between Roraima and Delta: per the Agreements, Roraima (1) managed security to meet the requirements of the TSA, FAA, and other U.S. laws; (2) maintained a business relationship with Delta, which operated flights to JFK; and (3) handled the luggage of New York residents, Additionally, Levans argues Roraima's website marketed the company to international carriers.

The mere fact that *United States* laws are referenced in the Agreements cannot be a basis for a *New York* court to exercise personal jurisdiction over Roraima. Neither Roraima's business relationship with Delta nor Roraima's handling of New York passengers' luggage in Guyana amounts to the transaction of business in New York. Indeed, treating these contacts as jurisdic-

tion-conferring would prove too much: if they were deemed sufficient, Roraima could be subject to suit in every jurisdiction in which Delta operates flights from Guyana and every location to or from which its passengers are travelling.

 Nor does the fact that Roraima's website is available to New York residents constitute a purposeful New York activity. Courts assess the level of "interactivity" of a website to determine whether it satisfies the transacts business clause. "Passive websites," which do not confer jurisdiction, "primarily make information available to viewers but do not permit an exchange of information." *Hsin Ten Enter. USA, Inc. v. Clark Enters.,* 138 F.Supp.2d 449, 456 (S.D.N.Y.2000). "At the other end of the spectrum are cases in which the defendant clearly does business over the Internet, such as where it repeatedly transmits computer files to customers in other states." *Id.* "Interactive" websites, permitting "the exchange of information between the defendant and website viewers," occupy the middle ground and generally confer jurisdiction. *Id.; Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 565 (S.D.N.Y.2000) (website was "interactive" where New York customers could apply for loans, print out applications, "chat" with representatives, and e-mail questions and receive rapid responses).

Plaintiff's only allegation regarding Roraima's website—that "Roraima ... markets itself to other international carriers as a full-service provider of ground handling services at the Georgetown, Guyana airport" through its website—highlights its passive nature.[4] Opp. Mem. at 11. In any

---

4. Levans submits an exhibit displaying a screenshot of the "Ground Handling" tab on Roraima's website, which shows a summary of Roraima's services and the company's fax

and telephone numbers. *See* Malecki 6/11/13 Affirmation, Ex. 5. The contact information does not render the website "interactive." Even when website viewers can contact a

event, the website, as well as Levans's other alleged contacts, have no connection to Roraima's alleged negligence and are clearly insufficient to justify the exercise of personal jurisdiction.

Finally, I note that the Agreements, in and of themselves, do not constitute the transaction of business within New York, It is undisputed that Roraima had no contract with Levans and never availed itself of New York to achieve such a contract. *Compare O'Mahoney*, 531 Fed.Appx. at 42. *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996), relied upon by Levans, identifies several non-dispositive factors that courts analyze, typically where contracts *between a plaintiff and a defendant* are at issue: whether there was an on-going contractual relationship with a New York corporation; the contract was negotiated or executed in New York; the defendant visited New York to meet with contractual parties; the contract contained a New York choice-of-law clause; and the contract required franchisees to send notices and payments into New York or subjected them to supervision by the corporation in New York. *See id.* In examining the *Agency Rent A Car* factors, the Agreements offer no basis for treating them as New York transactions of business. Levans cannot escape the fact that the Agreements, in essence, concern the provision of services outside of New York. That Delta may transact business in New York does not confer jurisdiction over Roraima.

Having considered the totality of Roraima's activities within the forum, I conclude that plaintiff has not made a prima facie showing that Roraima transacted business within New York pursuant to § 302(a)(1).

### 2. Section 302(a)(1)—Contracts to Supply Goods or Services Clause

▮▮▮ Levans also argues that, through the Agreements, Roraima caused goods or services to be provided in New York. *See* Opp. Mem. at 10–11. But under the statute, the relevant *services* must be supplied "in the state," and plaintiff alleges only that Roraima performed services under the Agreements in Guyana, not in New York. CPLR § 302(a)(1). Nor did the Agreements concern the supplying of *goods* in New York; instead, Roraima's contracts with Delta solely related to *services* provided in Guyana.

Finally, the allegations cannot support the "arising from" requirement. *See Copterline Oy v. Sikorsky Aircraft Corp.*, 649 F.Supp.2d 5, 12–15 (E.D.N.Y.2007).

In sum, plaintiff has failed to make a prima facie showing that § 302(a)(1) confers jurisdiction over Roraima.

### B. Section 302(a)(3)

▮▮▮ Pursuant to § 302(a)(3), a court may exercise personal jurisdiction over a non-domiciliary who:

---

company through its website, New York courts have considered those websites "passive" where no other indicia of interactivity existed. *See, e.g., Arouh v. Budget Leasing, Inc.*, 63 A.D.3d 506, 506, 883 N.Y.S.2d 4 (1st Dep't 2009) ("Defendant's web site, which described available cars and featured a link for e-mail contact but did not permit a customer to purchase a car, was not a projection of defendant into the state."); *see also Yanouskiy v. Eldorado Logistices Sys., Inc.*, 2006 WL 3050871, at *3 (E.D.N.Y. Oct. 20, 2006) ("[T]he website contains a contact information page where viewers may leave their e-mail address and a short message, both of which will presumably be transmitted to Eldorado after the viewer clicks 'submit query.' However, the mere ability to contact defendant, standing alone, establishes nothing for purposes of this Court's general jurisdiction analysis.").

(3) commits a tortious act without the state causing injury to person or property within the state . . . if he

 (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

 (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . . .

Thus, in order to establish jurisdiction under § 302(a)(3)(i) or (ii), a plaintiff must first show that: (1) the defendant committed a tortious act outside New York; (2) the claim arose from that tortious act; and (3) the act caused injury to a person or property within New York. *See Solé Resort*, 450 F.3d at 106 (citing *LaMarca v. Pak–Mor Mfg. Co.*, 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 735 N.E.2d 883 (2000)). Only the third prong is in issue here.

■ To determine if a tort caused injury within New York, courts traditionally employ the situs of injury test, "which asks them to locate the original event which caused the injury." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (internal quotations omitted). The "original event" is "generally distinguished not only from the initial tort but from the "final economic injury and the felt consequences of the tort." " *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 39–40 (2d Cir.2010) (internal quotations omitted). "[T]he original event occurs where the first effect of the tort that ultimately produced the final economic injury is located." *Id.* at 40 (internal quotations omitted).

Some scenarios applying the situs of injury test yield well established results. For example, where a manufacturer ships a defective product to New York where it injures a New York resident, the injury clearly occurs in New York. *See, e.g., Tonns v. Spiegel's*, 90 A.D.2d 548, 549, 455 N.Y.S.2d 125 (2d Dep't 1982). In contrast, where a New York resident is injured outside of New York, but merely experiences subsequent economic effects in the state, there is no jurisdiction. *See, e.g., United Bank of Kuwait, PLC v. James M. Bridges, Ltd.*, 766 F.Supp. 113, 116 (S.D.N.Y.1991).

Because of the difficulty in applying the situs of injury test to less obvious factual circumstances, the test has been subject to limiting interpretations. In the medical malpractice context, courts have held that the "original event" occurs where the medical treatment was administered and where the first effects of the doctors' alleged negligence were thereby inflicted, whether felt or not. *See Hermann v. Sharon Hosp., Inc.*, 135 A.D.2d 682, 683, 522 N.Y.S.2d 581 (2d Dep't 1987) (no personal jurisdiction where patient experienced effects in New York because the "original event" occurred in Connecticut where the procedure was performed). In copyright infringement cases involving the uploading of copyrighted printed literary works onto the Internet, the New York Court of Appeals concluded, in answering a certified question, that the situs of the injury is where the copyright holder is located rather than the location of the infringing action. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 301–02, 921 N.Y.S.2d 171, 946 N.E.2d 159 (2011); *Penguin Grp. (USA) Inc. v. Am. Buddha*, 640 F.3d 497, 500–01 (2d Cir.2011). Similarly, in the improper discharge context, the Second Circuit has held that the "original event" occurred in New York where the plaintiff, who usually worked in New York, had the "experience of being removed from his job," rather than where the plain-

tiff was terminated. *See DiStefano,* 286 F.3d at 85.

Despite concerns about applying the test, *see, e.g., Reyes v. Sanchez–Pena,* 191 Misc.2d 600, 608–10, 742 N.Y.S.2d 513 (N.Y.Sup.Ct.Bnx.Cnty.2002), courts have continued to use it. *Doe v. Del. State Police,* 939 F.Supp.2d 313 (S.D.N.Y.2013), is instructive. In *Doe,* the Delaware State Police searched for Doe at the wrong address; not finding him there, they incorrectly concluded that Doe had not re-registered as a sex offender after changing his address. *See id.* at 319. The Seaford Police relied on this conclusion in issuing a warrant for Doe's arrest. *See id.* Doe later moved to New York, where he was stopped for a traffic violation and arrested on the outstanding warrant. *See id.* In analyzing whether it could exercise personal jurisdiction over the Seaford Police, the court reasoned that the "initial tort" was the Delaware State Police's negligence in searching for Doe at the wrong address, and the "original event" was the Seaford Police's issuance of the warrant because it "caused any injuries that followed." *Id.* at 328. The court reasoned that, "[e]ven reconceptualizing the tort to include the issuance of the warrant as a separate act of negligence, its 'first effect' was felt in Delaware, where Doe still lived at the time and *where he would have been subject to arrest pursuant to the warrant,* and not in New York, to which Doe moved *only after all of the events constituting Defendants' negligence allegedly took place.*" *Id.* (emphasis added). In other words, "once the warrant was issued, the threat of its enforcement would be felt wherever Doe went." *Id.* at 329; *see also Faherty v. Fender,* 572 F.Supp. 142, 150 (S.D.N.Y. 1983) (where default judgment was fraudulently obtained against New York plaintiff in Texas, plaintiff suffered injury in Texas, not in New York where plaintiff sustained emotional and financial consequences of

the judgment); *de Ganay v. de Ganay,* 2012 WL 6097693, at *6 (S.D.N.Y. Dec. 6, 2012) (France was situs of injury because the "original event" was the French court's reliance on plaintiffs ex-husband's misrepresentations in liquidating the marital estate).

Applying the principles derived from these cases to the highly unusual allegations in this case, I conclude that the "initial tort" was Roraima's alleged failure to appropriately oversee the handling of plaintiff's luggage. The placement of cocaine in plaintiff's bag, which is alleged to have occurred in Guyana, was the "original event" causing injury because all of Levans's alleged injuries stemmed from it. Like the plaintiff in *Doe,* who was subject to arrest in Delaware after the issuance of the warrant, Levans presumably would have been subject to arrest in Guyana before his flight took off if the cocaine in his luggage had been detected at Cheddi. In sum, plaintiff has not made a prima facie showing of personal jurisdiction under § 302(a)(3) because Guyana, not New York, is the situs of injury.

### 1. Section 302(a)(3)(i)

Even if plaintiff had alleged an in-state injury, he has failed to plead facts sufficient to support a prima facie case of personal jurisdiction under § 302(a)(3)(i). Under this subsection, a plaintiff must further demonstrate one of four forms of ongoing New York activity by the defendant: regularly doing business in New York, regularly soliciting business in New York, engaging in a persistent course of conduct in New York, or deriving substantial revenue from goods used or consumed or services rendered in New York.

In conclusory terms, plaintiff alleges that he satisfies § 302(a)(3)(i) because "Roraima regularly conducts business within

the State through its contracts to provide ground handling and security services for the luggage placed on Delta Air Lines flights originating from Georgetown, Guyana to New York City." Opp. Memo. at 13.

"[T]o establish that a defendant 'does or solicits business' in New York, it must be shown that his 'overall contact with New York is substantial enough to make it reasonable to subject him to jurisdiction and feasible for him to defend here.'" *Murdock v. Arenson Int'l USA, Inc.*, 157 A.D.2d 110, 113, 554 N.Y.S.2d 887 (1st Dep't 1990) (quoting Siegel, New York Practice, § 88) (concluding contacts were minimal where British corporation with principal place of business in London was never registered to do business in New York; did not maintain any personnel, bank accounts, property, sales offices, or agents in New York; and had no contact with any New York company concerning the component at issue).

As described above, Roraima's business relationship with Delta is insufficient to show that it "transacted business" in New York under § 302(a)(1). And Levans does not allege other facts indicating that Roraima ever conducted business in New York. Therefore, Levans cannot satisfy § 302(a)(3)(i).[5]

### 2. Section 302(a)(3)(ii)

Nor can plaintiff demonstrate that Roraima "expect[ed] or should reasonably [have] expect[ed] the [alleged tortious] act to have consequences in the state," as required by § 302(a)(3)(ii). The foreseeability of consequences requirement is "intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious con-

duct committed elsewhere." *LaMarca*, 95 N.Y.2d at 215, 713 N.Y.S.2d 304, 735 N.E.2d 883 (internal quotations omitted) (holding that manufacturer reasonably foresaw its actions would have direct consequences in New York because manufacturer's invoice showed that defective object was destined for use in state). The defendant "need only reasonably foresee" its actions "would have direct consequences within the State," not "the specific event that produced the alleged injury" itself. *Id.*

There is some uncertainty as to whether courts should require "purposeful availment" as part of the foreseeability element. Before 2000, "New York courts ... sought to avoid conflict with federal constitutional due process limits ... by applying the 'reasonable expectation' requirement in a manner consistent with United States Supreme Court precedent." *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir.1999). In 2000, the New York Court of Appeals decided *LaMarca*, in which it analyzed "purposeful availment" under the "minimum contacts" portion of the due process analysis, rather than under New York's long-arm statute. *See LaMarca*, 95 N.Y.2d at 214–19, 713 N.Y.S.2d 304, 735 N.E.2d 883. It is unclear whether *LaMarca* purposefully changed the established framework, as applied in *Kernan*. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 n. 3 (2d Cir.2002) (noting *LaMarca's* omission, but declining to decide whether "purposeful availment" is necessary under § 302(a)(3)(h)); *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F.Supp.2d 228, 243 n. 4 (S.D.N.Y.2010) (same).

Since *LaMarca*, many courts have continued to read "purposeful availment" into

---

**5.** Plaintiff bases his § 302(a)(3)(i) argument only on "regularly doing business" in New York. The other three forms of ongoing New York activity under § 302(a)(3)(i) are clearly unavailing.

the statutory foreseeability analysis. *See, e.g., Ferri v. Berkowitz*, 678 F.Supp.2d 66, 78 (E.D.N.Y.2009); *Yash Raj Films (USA) Inc. v. Dishant.com LLC*, 2009 WL 4891764, at *10 (E.D.N.Y. Dec. 15, 2009); *Hollenbeck v. Comeq, Inc.*, 2007 WL 2484299, at *5 (N.D.N.Y. Aug. 28, 2007); *Traver v. Officine Meccaniche Toshci SpA*, 233 F.Supp.2d 404, 412–13 (N.D.N.Y.2002). This approach is reasonable given the importance of avoiding constitutional issues in interpreting statutes. *See Clark v. Martinez*, 543 U.S. 371, 381–82, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005); *Fantis Foods, Inc. v. Standard Importing Co., Inc.*, 49 N.Y.2d 317, 327, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1980).

"Minimum contacts" necessary to support the exercise of personal jurisdiction "exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir.2013) (internal quotations omitted). In analyzing minimal contacts, the court examines the defendant's conduct, not that of plaintiffs or third parties, because the defendant's connection "with the forum State [cannot] result[ ] from decisions made by others. . . ." *LaMarca*, 95 N.Y.2d at 217, 713 N.Y.S.2d 304, 735 N.E.2d 883 (distinguishing the case from *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) on this basis); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Levans argues that Roraima expected or reasonably should have expected its alleged negligence to have consequences in New York because it "enter[ed] into a contractual relationship with Delta Air Lines to provide handling and security services for their luggage intended to reach New York." Opp. Mem. at 13. Like the manufacturer in *LaMarca*, it is plausible that Roraima foresaw or could have foreseen that its actions could have an effect in New York. But that foreseeability is not enough. *See, e.g., Yash Raj Films*, 2009 WL 4891764, at *10 (no personal jurisdiction because defendants did not purposefully affiliate themselves with New York, although it was foreseeable that website targeting South Asians would be accessed by residents of New York, since many South Asians live in the state).

Here, plaintiff has proffered that Roraima was involved with New York only in the sense that it handled luggage, some of which was destined for New York. As discussed above, any relationship Roraima had with New York is premised on Delta's decision to operate flights to JFK, rather than Roraima's own contacts with the forum. In sum, there is a dearth of contacts with New York indicating purposeful availment of the forum. Under these circumstances, Roraima could not have reasonably foreseen that it would be haled into court here.[6]

Plaintiff therefore has not made a prima facie showing of personal jurisdiction under § 302(a)(3)(ii).

---

**6.** Section 302(a)(3)(ii) also requires that the defendant "derives substantial revenue from interstate or international commerce." The requirement "is designed to narrow the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but whose business operations are of a local character." *LaMarca*, 95 N.Y.2d at 215, 713 N.Y.S.2d 304, 735 N.E.2d 883 (internal quota-

tions omitted). It seems clear that Roraima's business is of a purely local character. *See Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir.1997). I recognize that plaintiff has not had the opportunity to take discovery related to the revenue requirement. But jurisdictional discovery is unnecessary here because, in any event, Levans has failed to satisfy the situs of injury test and the foreseeability of consequences requirement.

## CONCLUSION

For the foregoing reasons, the motion to dismiss Roraima for lack of personal jurisdiction is granted.

**SO ORDERED.**