The McGRAW–HILL COMPANIES, INC., Plaintiff,

v.

INGENIUM TECHNOLOGIES CORPORATION, Defendant.

No. 05 CIV.2127 JSR.

United States District Court, S.D. New York.

June 14, 2005.

See also 2005 WL 1026024.

---

Adam J. Richards, David J. Sheehan, E. Evans Wohlforth, Oren J. Warshavsky, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, New York, NY, for Plaintiff.

Edwin Francis Chociey, Jr., Riker Danzig Scherer Hyland Perretti LLP, Morristown, NJ, for Defendant.

## MEMORANDUM

RAKOFF, District Judge.

On April 15, the Court denied defendant's motion to dismiss the above-captioned case. *See* Order, 4/15/05. This Memorandum states the reasons for that determination.

Because the grounds for defendant's motions are not premised only on the pleadings but raise such as issues as abstention and lack of personal jurisdiction, the Court has considered, as to applicable grounds, facts going beyond the pleadings that were uncontested for the purpose of this motion. The pertinent facts are as follows:

Plaintiff McGraw–Hill Companies, Inc. ("McGraw–Hill") is a New York corporation. *See* First Amended Complaint ("Complaint") ¶¶ 1, 21. Defendant Ingenium Technologies Corporation ("Ingenium") is incorporated under the laws of British Columbia, Canada, with its principal offices in Vancouver, British Columbia. *Id.* ¶ 3. It has 23 employees, all located in Vancouver. Certification of Howard Evans, 3/21/05.

One of McGraw–Hill's businesses is providing data regarding the construction industry in the form, *inter alia,* of a computerized data service. *See* Complaint ¶¶ 18–20, 26. Some time prior to 2000, Ingenium developed a web-based application that allowed customers of computerized data services, such as McGraw–Hill's, to search and manage their data. *Id.* ¶ 30. On March 28, 2000, the parties signed an Agreement under which McGraw–Hill agreed to promote and distribute Ingenium's software to its customer base, rebranding it as a McGraw–Hill product with McGraw–Hill trademarks, in exchange for a percentage of the revenues. *See* Marketing and Distribution Agreement (the "Agreement"), attached as Exhibit A to Declaration of Brian P. Tonry, 3/21/05. McGraw–Hill negotiated this agreement from its New York office. Declaration of Brian P. Tonry, 4/1/05 ("Tonry April Decl."), ¶ 3.

Over the next few years, the parties worked closely to develop new versions of the service, which is now called Premium, market it to McGraw–Hill's customer base, and integrate it into McGraw–Hill's other offerings. This arrangement became Ingenium's main source of revenue. Tonry April Decl. ¶ 2. Approximately 80 Premium customers were based in New York, and they produced at least $180,000 in annual revenues for Ingenium. *Id.* ¶ 4. While the contracts the customers signed were with McGraw–Hill, Ingenium until 2004 was the sole provider of customer service, training, and other technical support for these customers. *See* Certification of Howard Evans, 4/1/05, ¶ 48. Beginning in 2001, Ingenium officials met with McGraw–Hill employees at McGraw–Hill's offices in New York several times each year. *Id.* ¶ 7. There were numerous other contacts with New York as well; for example, Ingenium each month e-mailed to

a McGraw–Hill employee based in New York a revenue and expense report relating to their arrangements. *Id.* ¶ 5.

The Agreement is due to expire on June 30, 2005, *see* Complaint ¶ 64. As the expiration approached, the parties began to squabble over, among other things, their respective contractual obligations, whether Ingenium has a protected interest in the Premium customer base or is merely a third-party supplier to McGraw–Hill, and who owns various intellectual properties involved. On January 17, 2005, Ingenium sued McGraw–Hill in British Columbia, *see* Statement of Claim, attached to Declaration of David J. Sheehan, 4/1/05, as Exhibit B, alleging breach of contract and seeking money damages, a declaration of Ingenium's intellectual property rights, and injunctive relief. *See id.* at 8–9. On February 14, 2005, McGraw–Hill filed this action, which now has ten causes of action, including, *inter alia,* breach of contract, trademark and copyright infringement, and tortious interference with contract and with prospective economic advantage. *See* Complaint. On April 1, the British Columbian court denied Ingenium's motion for a preliminary injunction, *see* Reasons for Judgment, attached to Reply Certification of David A. Garner, 4/6/05, as Exhibit B ("British Columbian Judgment"). On April 15, this Court denied McGraw–Hill's motion for a preliminary injunction without prejudice to McGraw–Hill's renewing its motion in accordance with certain guidelines. *See* Order, 4/15/05. While McGraw–Hill has declined to renew its motion, Ingenium has filed its own preliminary injunction motion, which is now fully briefed.

Against this background, defendant contends, *first,* that this Court should abstain, and dismiss, in favor of the first-filed case in British Columbia. *See Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). While several of the factors favoring abstention are present here, notably the identity of the parties and the overlap of certain of the breach of contract claims, a very significant part of the instant lawsuit centers on plaintiff's claims that defendant has infringed, or is about to infringe, plaintiff's United States copyrights and trademarks, and serious doubts have been raised about the ability of the British Columbian court to adjudicate these claims in ways that would avoid re-litigation here. Indeed, it is well-established that "decisions of foreign courts concerning the respective trademark rights of the parties are irrelevant and inadmissible" in United States courts hearing Lanham Act claims, *Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 639 (2d Cir. 1956); *see Calzaturificio Rangoni S.A. v. United States Shoe Corp.,* 868 F.Supp. 1414, 1418–19 (S.D.N.Y.1994) (refusing to enforce trademark judgment from Italian court). Furthermore, a significant part of the relief sought by both sides with respect to the trademark and copyright disputes is injunctive relief, and the British Columbian court has already expressed doubts about its authority to restrain McGraw–Hill's behavior, which largely is unconnected with Canada. *See* British Columbian Judgment ¶ 28. Under these circumstances, it would be inappropriate for this Court, the only court with clear authority to hear the case and to grant full relief both before and after trial, to abstain in favor of a potentially inadequate alternative forum.

*Second,* given the absence of an adequate alternative forum, defendant's motion to dismiss on the ground of *forum non conveniens* is likewise denied.

*Third,* defendant's motion to dismiss on grounds of international comity must likewise fail, not only because of the absence

of an adequate alternative forum, but also because this simple commercial dispute does not implicate the primary concern of the comity doctrine, which is avoiding entangling United States courts in international relations. *See Jota v. Texaco Inc.*, 157 F.3d 153, 160 (2d Cir.1998).

■ *Fourth*, defendant's motion to dismiss for lack of personal jurisdiction must likewise be denied. With respect to the federal law claims (for copyright and trademark infringement), the Court applies the long-arm statute of the forum state, New York. *See PDK Labs., Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). Among other things, New York's law-arm statute permits personal jurisdiction over an out-of-state defendant who commits a tortious act outside of the state that causes injury to "person or property within the state," N.Y. C.P.L.R. § 302(a)(3), provided the defendant "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce," *id.* § 302(a)(3)(ii).[1] The torts of copyright and trademark infringement cause injury in the state where the allegedly infringed intellectual property is held, *see, e.g., Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.*, 2005 WL 357125, *1, 2005 U.S. Dist. LEXIS 2143, at *4 (S.D.N.Y.2005), in this case New York. It is reasonably foreseeable that the provision of materials that infringe the copyrights and trademarks of a New York company will have conse-

quences in New York, *see Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 568 (S.D.N.Y.2000), and the defendant derives substantial revenue from international commerce. New York's long-arm statute is therefore satisfied with respect to the federal-law claims.

■ As for the state-law claims, personal jurisdiction can be asserted over anyone who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). Depending upon whose interpretation of the disputed contract prevails at trial, defendant either contracted to supply its service to a New York company or contracted to have its services supplied to Premium customers, including many located in New York, *see Citigroup*, 97 F.Supp.2d at 566 (where licensee of intellectual property uses material in New York pursuant to agreement, licensor is deemed to have contracted to supply materials in state). Defendant also transacted business within the state, since, during the course of this years-long relationship with a New York company, it made various web-based services available to specific customers in New York, its officers regularly traveled to New York and conducted business here, and it was in constant telephonic and computer contact with both plaintiff's employees and Premium customers in New York.[2] *See United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F.Supp.2d 198, 205–06 (S.D.N.Y.2002). Finally, the defendant

---

1. Defendant argues that the language of this provision requires that a tort already have been committed, ruling out its use in a case where, as here, much of the alleged trademark infringement is prospective in nature. However, this argument was rejected in *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 203–04, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (N.Y. 1978).

2. Defendant's arguments imply that these latter contacts should be discounted or ignored entirely because defendant was not physically present in the state. However, business can be conducted in New York remotely. *See, e.g., Parke–Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 17–18, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970) (participating in New York auction via telephone subjected caller to personal jurisdiction in New York).

has had sufficient contacts with New York as to have "purposefully availed" itself "of the privileges of conducting business in New York so as to reasonably expect to be subject to suit here," *PDK Labs*, 103 F.3d at 1110–11, thereby satisfying due process requirements.

 *Fifth*, defendant's motion to dismiss the trademark and copyright claims on grounds of extraterritorial application and on grounds of lack of ripeness is likewise denied. While defendant is correct that copyright and trademark laws have only limited extraterritorial application, *see Sterling Drug v. Bayer AG*, 14 F.3d 733, 745–46 (2d Cir.1994); *Filmvideo Releasing Corp. v. Hastings*, 668 F.2d 91, 93 (2d Cir.1981), no such extraterritorial application is contemplated in this case, where plaintiff seeks an injunction that applies to activities felt within the United States. *See, e.g., United Feature Syndicate*, 216 F.Supp.2d at 225 (motion to dismiss copyright infringement claim for similar reasons "borders on the frivolous" where allegedly infringing material is accessible from computers within United States). Similarly baseless is defendant's argument that there is no ripe claim or controversy here; it is abundantly clear that the two parties are on a collision course that has already framed the essential disputes in plain terms and that will enable the Court to determine their respective rights in the Premium service. Thus, the Court can properly exercise subject matter jurisdiction over these claims.[3]

Accordingly, for the reasons stated above, the Court on April 15, 2005, denied defendant's motion to dismiss in its entirety.

---

3. In addition, while the Court would retain supplemental jurisdiction over the state-law claims in any event, it has diversity jurisdiction over them. The Premium service generates millions of dollars annually, and so the value of declaratory judgment claims that would decide its ownership easily exceeds the $75,000 minimum, even if no money would change hands. *See A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87–88 (2d Cir.1991).