09-1739-cv
Penguin Group (USA) Inc., v. American Buddha

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: January 7, 2010    Question Certified: June 15, 2010)

Docket No. 09-1739-cv

-------------------------------------

PENGUIN GROUP (USA) INC.,

Plaintiff-Appellant,

- v -

AMERICAN BUDDHA,

Defendant-Appellee.

-------------------------------------

Before:    SACK, KATZMANN, and CHIN,[*] Circuit Judges.

Appeal from an order of the United States District Court for the Southern District of New York (Gerard E. Lynch, Judge) granting the defendant's motion to dismiss the plaintiff's copyright infringement action for lack of personal jurisdiction. Jurisdiction over the defendant, American Buddha, was asserted under a provision of New York's Long-Arm Statute. Because deciding whether the plaintiff's alleged injury resulting from alleged copyright infringement with respect to material uploaded to the Internet out-of-state and made available from servers located out-of-state occurred in New York for purposes of

---

[*] The Honorable Denny Chin, who was at the time of argument a United States District Judge for the Southern District of New York, sitting by designation, is now a member of this Court.

applying section 302(a)(3)(ii) requires the resolution of an undecided question of New York law, we certify that question to the New York Court of Appeals.

RICHARD DANNAY, Cowan Liebowitz & Latman, P.C. (Thomas Kjellberg, of counsel), New York, NY, for Plaintiff-Appellant.

CHARLES CARREON, Online Media Law, PLLC, Tucson, AZ, for Defendant-Appellee.

Sack, Circuit Judge:

Plaintiff Penguin Group (USA) ("Penguin") appeals from an order of the United States District Court for the Southern District of New York (Gerard E. Lynch, Judge) granting defendant American Buddha's motion pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss Penguin's copyright infringement action for lack of personal jurisdiction. Penguin Group (USA) Inc. v. Am. Buddha, No. 09 Civ. 528, 2009 WL 1069158, 2009 U.S. Dist. LEXIS 34032 (S.D.N.Y. Apr. 21, 2009). Penguin alleges in its complaint that American Buddha unlawfully uploaded to servers an unauthorized copy of four of Penguin's copyrighted works for downloading, via the Internet and free of charge, by any of the 50,000 members of what American Buddha terms its "online library."

The sole issue on appeal is whether there is a basis for personal jurisdiction over American Buddha in New York enabling the district court to decide this dispute. Penguin asserted that the court has such jurisdiction under a provision of New York's Long-Arm Statute, N.Y. C.P.L.R. § 302(a)(3)(ii),

2

that allows for jurisdiction over an out-of-state defendant with no contacts with New York, if, <u>inter alia</u>, the defendant is alleged to have committed a tortious act outside the State that caused, and reasonably should have been expected by the putative defendant to cause, injury to a person or property within the State.

The district court recognized two competing lines of authority interpreting section 302(a)(3)(ii), one that views the situs of injury as the location of the infringing conduct and one that views the situs of injury as the location of the plaintiff and, in some cases, the location of its intellectual property. Relying on the first line of authority and rejecting the second, the court concluded that the situs of the injury allegedly resulting from the asserted infringement of Penguin's copyrights would be where the book was electronically copied -- presumably in Arizona or Oregon, where American Buddha and its computer servers were located -- and not New York, where Penguin was headquartered. Accordingly, the court dismissed the case for failure adequately to plead injury in New York. <u>Penguin</u>, 2009 WL 1069158, at *4, 2009 U.S. Dist. LEXIS 34032, at *13.

Determining the situs of injury for the purposes of N.Y. C.P.L.R. § 302(a)(3)(ii) in a copyright case requires analysis of state law and policy considerations that this Court is ill-suited to make. Specifically, it requires a determination of how the New York State Legislature intended to

3

weigh the breadth of protection to New Yorkers whose copyrights have allegedly been infringed against the burden on non-resident alleged infringers whose connection to New York may be remote and who may reasonably have failed to foresee that their actions would have consequences in New York.

We therefore certify the following question to the New York Court of Appeals: In copyright infringement cases, is the **situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?** Although Penguin has not effectively pleaded that the situs of injury is affected by the fact that the infringement here occurred through the media of the Internet and an online library, we recognize that this factor may be relevant to the considerations underlying the definition of the situs of injury due to the speed and ease with which the Internet may allow out of state actions to cause injury to copyright holders resident in New York.

**BACKGROUND**

The plaintiff, Penguin Group USA, describes itself as "the U.S. arm of the internationally renowned Penguin Group, a leading United States trade book publisher and the second-largest English-language trade book publisher in the world, with its

principal place of business" in New York City.  Appellant's Br. at 5.  American Buddha describes itself as "an Oregon nonprofit corporation" that, through its operation of a "passive website" known as the Ralph Nader Library but unaffiliated in any way with Ralph Nader, "operates an online library that provides access to classical literature and other works through the website, including three works published in print format by Plaintiff-Appellant Penguin Group (USA) Inc."  Appellee's Br. at 3 (footnotes omitted).

Penguin brought this copyright infringement action against American Buddha under 17 U.S.C. § 501, alleging that American Buddha infringed on Penguin's copyrights in four works[1] by publishing complete copies of them on coordinated websites – together comprising "online libraries" -- that it operates called the American Buddha Online Library and the Ralph Nader Library. American Buddha has made these works available to its 50,000 members free of charge.  It has also provided its members with assurances that American Buddha's uploading of these works and the users' downloading of the works do not constitute copyright infringement because they are protected under Sections 107 and 108 of the Copyright Act, 17 U.S.C. § 101 et seq., which govern fair use and reproduction by libraries and archives,

---

[1] The four works at issue are Oil! by Upton Sinclair, It Can't Happen Here by Sinclair Lewis, The Golden Ass by Apuleius translated by E.J. Kenney, and On the Nature of the Universe by Lucretius translated by R.E. Latham.

respectively. Penguin disputes that any exception to the Copyright Act applies to American Buddha's conduct.

American Buddha, as noted, is an Oregon not-for-profit corporation whose principal place of business is in Arizona and whose websites are hosted on servers located in Arizona and Oregon. Aside from the accessability of its sites in New York, American Buddha conducts no business in, and has no other contacts with, the State. The infringing conduct was not alleged to have occurred in New York.

American Buddha filed a motion in the district court to dismiss Penguin's complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Penguin asserted personal jurisdiction under New York's Long-Arm Statute, N.Y. C.P.L.R. § 302. American Buddha was not subject to the jurisdiction of courts in New York under N.Y. C.P.L.R. § 302(a)(1) (conferring jurisdiction over a party that "transacts any business within the state or contracts anywhere to supply goods or services in the state") or N.Y. C.P.L.R. § 302(a)(2) (conferring jurisdiction over a party that "commits a tortious act within the state"). Penguin therefore premised its claim of jurisdiction on N.Y. C.P.L.R. § 302(a)(3)(ii), which, under specified circumstances, allows for long-arm jurisdiction over out-of-state residents who commit tortious acts outside of the State if the resulting injury occurs in, and it was foreseeable to the prospective defendant that the injury would occur in, New

6

York.[2]  The central question for the district court, in deciding whether it had personal jurisdiction over the defendant with respect to the claims made in the complaint, was whether the injury from the alleged infringement by American Buddha occurred in New York.

The district court granted American Buddha's motion to dismiss because it found the situs of injury to be where the electronic copying of the works was made -- presumably, although this was not explicitly stated by the court, in Arizona or Oregon, where the servers to which American Buddha uploaded the works were located -- and not in New York, where Penguin's headquarters is located.  Penguin, 2009 WL 1069158, at *3-*4, 2009 U.S. Dist. LEXIS 34032, at *12-*13.  The court recognized a division of authority as to how to determine the situs of injury for the purposes of N.Y. C.P.L.R. § 302(a)(3)(ii).  It was ultimately persuaded by a line of cases recognizing "the well-established principle requiring a direct injury in New York" and rejecting jurisdiction based on "purely derivative economic injury" suffered in-state solely because of the location of the plaintiff's business in-state.  Id., 2009 WL 1069158, at *3-*4, 2009 U.S. Dist. LEXIS 34032, at *9, *11.

---

[2] As Penguin made no allegation that persons downloading material from the websites thereby infringed its copyrights, potential injury for personal jurisdiction purposes would have to be the result of American Buddha's, and not any downloading user's, infringement.

7

The court recognized that the Internet was a complicating factor for personal jurisdiction analysis. It nonetheless concluded that in this case, the Internet "plays no role in determining the situs of plaintiff's alleged injury" because a single incident of copyright infringement that occurred in Oregon or Arizona was alleged; downloading of that copied material by users in other locations, including hypothetically New York, was not. Id., 2009 WL 1069158, at *4, 2009 U.S. Dist. LEXIS 34032, at *12.

Penguin appeals.

**DISCUSSION**

I.  Introduction

There is only one issue presented on appeal, which is whether, for the purposes of New York's Long-Arm Statute, the situs of injury in copyright infringement cases is the location of the infringing conduct or the location of the plaintiff and, perhaps, the copyright. The language of the statute provides insufficient guidance to allow us to answer that question based on the statute's plain meaning. And while Penguin has not specifically pleaded that the situs of injury is influenced by the fact that the alleged infringement here was conducted by means of the Internet and online libraries, we recognize that this fact may affect the analysis.

We find insufficient guidance to answer the question of where the situs of injury is located in the text of the statute,

8

the statute's legislative history, or the jurisprudence of New York state courts. The district court did not have the ability to ask the New York Court of Appeals for guidance. We do. We therefore certify to the New York Court of Appeals this question: **In copyright infringement cases, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?**

## II. Standard of Review

We review a district court's dismissal of an action for want of personal jurisdiction de novo, construing all pleadings and affidavits in the light most favorable to the plaintiff and resolving all doubts in the plaintiff's favor. DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (per curiam).

## III. New York's Long-Arm Statute: N.Y. C.P.L.R. § 302

A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit. In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006). Such a showing entails making "legally sufficient allegations of

9

jurisdiction," including "an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." In re Magnetic Audiotape, 334 F.3d at 206 (internal quotation marks and ellipsis omitted).

In litigation arising under federal statutes that do not contain their own jurisdictional provisions, such as the Copyright Act under which suit is brought in the case at bar, federal courts are to apply the personal jurisdiction rules of the forum state, see Fort Knox Music, Inc. v. Baptiste, 203 F.3d 193, 196 (2d. Cir. 2000), provided that those rules are consistent with the requirements of Due Process, see Metro. Life Ins. Co. v. Roberston-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). Except where the long-arm statute permits jurisdiction to the extent permitted by principles of Due Process -- as it commonly does in states other than New York -- analysis under Due Process principles is not necessary unless there is long-arm jurisdiction under the applicable state statute. See Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007); Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990).

In New York, the question of long-arm personal jurisdiction over an out-of-state defendant is governed by N.Y. C.P.L.R. § 302.[3]  The only basis for personal jurisdiction over

---

[3] Section 302 permits a court to exercise personal jurisdiction over an out-of-state party that: (1) transacts business or contracts to supply goods or services within the state; (2) commits a tortious act within the state; (3) commits a tortious act outside of the state that causes an injury to a person or property within the state, provided that the party (i)

10

American Buddha in New York that is asserted by Penguin is provided by section 302(a)(3)(ii).  It provides for jurisdiction over an out-of-state defendant who "commits a tortious act without the state causing injury to person or property within the state, . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . ."

In order to establish jurisdiction under that subsection of the law, a plaintiff is thus required to demonstrate that (1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce.  LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214, 735 N.E.2d 883, 886, 713 N.Y.S.2d 304, 307 (2000).

Only the third requirement of section 302(a)(3)(ii) is in dispute on this appeal:  Whether the defendant's allegedly copyright-infringing conduct in Oregon or Arizona caused the requisite injury in New York.

---

engages in a persistent course of conduct with the state or (ii) expects or reasonably should expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses real property in the state.  N.Y. C.P.L.R. § 302.

If these five requirements were satisfied and personal jurisdiction were thus established under New York law, we would then assess whether a finding of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.  Best Van Lines, 490 F.3d at 242; Savin, 898 F.2d at 306.  For reasons explained below, we do not reach that issue on this appeal.

IV.  The Situs of Injury Under
N.Y. C.P.L.R. § 302(a)(3)(ii)

Neither the New York Court of Appeals nor this Court has decided what the situs of injury is in an intellectual property case.  District courts in this Circuit that have addressed the question have reached disparate results, some concluding that the injury occurs where the plaintiff experiences the loss; some concluding that it depends where the infringed property is held, apparently assuming that the property is held at its owner's residence or principal place of business;[4] and

---

[4] There is a possible question at the threshold that neither the district court nor the parties have addressed and which we do not here decide:  whether a copyright -- in and of itself an intangible thing -- has a physical location for jurisdictional purposes and, if so, what that location is.

Several courts have at least suggested that intellectual property has a location for jurisdictional purposes.  See, e.g., McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp., 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) (finding injury to be "where the allegedly infringed intellectual property is held"); Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp., No. 04 Civ. 5002, 2005 WL 357125, at *1 (S.D.N.Y. Feb. 14, 2005) (same); Tatum v. Hunter Eng'g Co., 25 F.3d 1050 (6th Cir. 1994) (per curiam) (Table) (finding the fact that "the design processes and intellectual property are located in California" to be relevant to evaluating contacts with that state).

If it does have a location, then, what is it?  Federal law appears equally unsettled on this point.  Some courts have

12

some concluding that the injury occurs where the infringing conduct took place. See section IV(E), infra.

A. The District Court's Analysis of the Situs of Injury

The district court recognized a division of authority as to the situs of injury for purposes of section 302(a)(3)(ii) in intellectual property infringement cases. The court was persuaded by decisions that suggested or concluded that the situs of injury is where the infringing conduct occurred (in this case, Oregon or Arizona) rather than where the plaintiff is located and the copyrights are owned (in this case, New York). Penguin, 2009 WL 1069158, at *3-*4, 2009 U.S. Dist. LEXIS 34032, at *9.

concluded, either explicitly or implicitly, that the location of intellectual property is the residence of its owner. See, e.g., Horne v. Adolph Coors Co., 684 F.2d 255, 259 (3d Cir. 1982) ("[I]nsofar as the situs of the property damaged by the alleged wrongdoing is a concern, both a state trade secret and a patent should be deemed to have their fictional situs at the residence of the owner."). "The theory [of these cases] is that, since intellectual property rights relate to intangible property, no particular physical situs exists. If a legal situs must be chosen, it is not illogical to pick the residence of the owner." Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1570 (Fed. Cir. 1994).

Other courts have reasoned that intellectual property is located wherever the infringing action is taken, because that is where the sales related to the intellectual property are in fact lost. See, e.g., id. at 1570 ("[W]hen an infringement occurs by a sale of an infringing product, the right to exclude is violated at the situs where the sale occurs.")

The issue has not been briefed or otherwise raised by the parties. We therefore accept for the purposes of this appeal the district court's implicit conclusion that copyrights have a location and that their location in this case is in New York State. See Penguin, 2009 WL 1069158, at *2-*3, 2009 U.S. Dist. LEXIS 34032, at *8 (recognizing line of cases that suggest that intellectual property injuries are located in the state where intellectual property is held).

13

> New York has long held that "the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there."

Id., 2009 WL 1069158, at *2-*3, 2009 U.S. Dist. LEXIS 34032, at *7-*8 (quoting Fantis Foods, Inc. v. Standard Importing Co., Inc., 49 N.Y.2d 317, 326, 402 N.E.2d 122, 125-26, 425 N.Y.S.2d 783, 786-87 (1980)).

The principal factual question addressed in the course of the district court's analysis was where the plaintiff lost business. Id., 2009 WL 1069158, at *3 & n.5, 2009 U.S. Dist. LEXIS 34032, at *9-*10 & n.5 (citing Am. Eutectic Welding Alloys Sales Co., Inc. v. Dytron Alloys Corp., 439 F.2d 428, 433 (2d. Cir. 1971)). The court analyzed this case as a run-of-the-mine copyright infringement action: It did not explicitly consider the impact, if any, of the means by which the alleged infringement was committed -- by use of an online library delivered through the Internet. Because Penguin pleaded infringement only by American Buddha, and not by any individual who downloaded material from American Buddha's site, the court reasoned that business was lost through the copying of the copyrighted works by American Buddha and not through their placement on the Internet. Id., 2009 WL 1069158, at *4, 2009 U.S. Dist. LEXIS 34032, at *12. The business was therefore lost where the books were uploaded -- Oregon or Arizona -- not where

14

they were downloaded and used, which could have been anywhere that the Internet is available, including New York.  Id.

B. Penguin's Arguments Regarding the Situs of Injury

On appeal, Penguin contends that the district court relied on the wrong line of cases both as a matter of law and as a matter of policy.  As a legal matter, Penguin argues that those cases are inconsistent with the reasoning of DiStefano v. Carozzi, Inc., 286 F.3d 81 (2d Cir. 2001) (per curiam), in which we concluded that the termination of employment of an employee at a meeting in New Jersey caused the employee injury in New York State, because New York was where the employee lived and where he performed the duties of his employment.  From a policy perspective, Penguin argues that

> [t]he restrictive reading of the long-arm
> statute under the line of cases followed by
> the District Court would substantially -- and
> unnecessarily -- stack the deck against the
> authors, publishers and other intellectual
> proprietors in New York in the accelerating
> struggle against Internet piracy, allowing
> pirates with the entire 21st-century arsenal
> of digital infringement tools to shelter
> behind a 19th-century personal jurisdiction
> model based on their physical location.

Appellant's Br. at 14.

C. Legislative History of N.Y. C.P.L.R. § 302(a)(3)(ii)

The legislative history of N.Y. C.P.L.R. § 302(a)(3) is of little assistance.  The provision was adopted to fill a gap in the New York Long-Arm Statute that was recognized in Feathers v. McLucas, 15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965). There, the New York Court of Appeals declined to apply section

15

302(a)(2), which provides for jurisdiction over any person who "commits a tortious act within the state," to a manufacturer whose negligent construction of a gas tank in Kansas had caused bodily injury in New York State.  Id., 15 N.Y.2d at 460, 209 N.E.2d at 77, 261 N.Y.S.2d at 21 (internal quotation marks omitted).

The following year, according to a Memorandum of the New York Judicial Conference, the New York State Legislature adopted section 302(a)(3) for the purpose of "broaden[ing] New York's long-arm jurisdiction so as to include non-residents who cause tortious injury in the state by an act or omission without the state."  Mem. of Judicial Conference, 1966 N.Y. Sess. Laws 2911 (McKinney) (as quoted in Reyes v. Sanchez-Pena, 191 Misc. 2d 600, 608, 742 N.Y.S.2d 513, 520 (N.Y. Sup. Ct. 2002)).  According to that memorandum, the amendment was  intended to be "broad enough to protect New York residents yet not so broad, even though constitutionally feasible, as to burden unfairly non-residents whose connection with the state is remote and who could not reasonably be expected to foresee that their acts outside of New York could have harmful consequences in New York."  Id.

We have not found in the legislative history any discussion of how to strike this balance in commercial tort cases (much less Internet copyright infringement cases), with respect to which the New York Court of Appeals has acknowledged that the locus of injury is "not as readily identifiable as it is in torts

16

causing physical harm." Sybron Corp. v. Wetzel, 46 N.Y.2d 197, 205, 385 N.E.2d 1055, 1058, 413 N.Y.S.2d 127, 131 (1978).

Penguin advocates an approach that emphasizes protection of New York residents or domiciliaries, while American Buddha advocates an approach -- the one that persuaded the district court -- that focuses on avoiding unjust burdens on non-residents whose connection with the State may be tenuous or remote. We think that deciding which approach better comports with the intent of the New York Legislature is more appropriate for the New York Court of Appeals than it is for us.

D. New York Courts' Interpretation of
   N.Y. C.P.L.R. § 302(a)(3)(ii)

The New York Court of Appeals has never squarely applied N.Y. C.P.L.R. § 302(a)(3)(ii) in the intellectual property context. Lower New York courts that have addressed section 302(a)(3)(ii) have not provided a clear indication of how the Court of Appeals would apply the section to the case we are presented with here.

It is settled New York law that the suffering of economic damages in New York is insufficient, on its own, to establish a "direct" injury in New York for N.Y. C.P.L.R. § 302(a)(3) purposes. Fantis Foods, 49 N.Y.2d at 326, 402 N.E.2d at 125-26, 425 N.Y.S.2d at 786-87 (rejecting jurisdiction based on loss of overall sales where conversion of goods occurred en route from Greece to Chicago); Sybron, 46 N.Y.2d at 205, 385 N.E.2d at 1058, 413 N.Y.S.2d at 131 (recognizing that courts have

17

concluded that "remote injuries located in New York solely because of domicile or incorporation here do not satisfy CPLR 302 (subd. (a), par. 3)"); Lehigh Valley Indus. v. Birenbaum, 527 F.2d 87, 94 (2d Cir. 1975) ("[S]ection 302(a)(3) is not satisfied by remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here.").

From this premise, some New York courts have concluded that the situs of injury is the location where the actions or events associated with the injury took place. See, e.g., Hermann v. Sharon Hosp., Inc., 135 A.D.2d 682, 683, 522 N.Y.S.2d 581, 583 (2d Dep't 1987) ("The situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff." (internal citations omitted)); Weiss v. Greenburg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff, P.A., 85 A.D.2d 861, 862, 446 N.Y.S.2d 447, 449 (3d Dep't 1981) ("[I]t has been held that the situs of a nonphysical, commercial injury is where the critical events associated with the dispute took place." (internal quotation marks and citations omitted)).

But in cases in which something more than economic injury is alleged, some New York courts have determined the situs of injury to be the place where the plaintiff is located and conducts business. Most prominently, in Sybron, the case in which the New York Court of Appeals recognized the applicability of section 302(a)(3) to commercial torts, the court decided that

18

domicile or incorporation in New York State alone was insufficient as a basis for personal jurisdiction. It concluded, however, that jurisdiction was appropriate where the plaintiff had additional ties to the State, such as the presence of the trade secrets and the threatened loss of customers here. Sybron, 46 N.Y.2d at 205, 385 N.E.2d at 1058, 413 N.Y.S.2d at 131.

The ties to New York State in Sybron were stronger than those in the case at bar. Sybron involved the alleged loss of a New York-specific customer base and the alleged acquisition of trade secrets in New York. Id., 46 N.Y.2d at 205-06, 385 N.E.2d at 1059, 413 N.Y.S.2d at 132. Its holding therefore does not dictate the result of this appeal. But Sybron does raise a reasonable likelihood that the New York Court of Appeals may interpret the alleged wrong here -- which is analogous to a commercial tort and involves both the presumptive presence of intellectual property rights in the State, and the likely ability of the plaintiff to foresee that the distribution of the copyrighted material in issue will cause loss beyond that caused by the initial unauthorized uploading of the copyrighted works -- to involve more than derivative economic harm within the State. Penguin has alleged infringement not only through the copying of its copyrighted work, but also through the unauthorized "reproduction and distribution" of the works over the Internet. Compl. ¶ 28. Penguin presented evidence that American Buddha had offered the materials to its 50,000 users via the Internet free of charge, and had provided assurances that downloading the works

19

would not constitute copyright infringement. Penguin has not asserted the foreseeable loss of customers in New York, and apparently for this reason the district court treated the alleged infringement to be analogous to "an unauthorized photocopy of a copyrighted book in Oregon or Arizona." Penguin, 2009 WL 1069158, at *4, 2009 U.S. Dist. LEXIS 34032, at *12. We note nonetheless in the context of certifying a question to the New York Court of Appeals that the allegation of distribution over the Internet may be a factor in the Court's interpretation of the statute in question.

E. Legal Arguments For and Against Finding New York
   To Be the Situs of Injury

1. Legal Arguments in Favor of Deeming New York To Be the Situs of Injury. Penguin's strongest legal argument would appear to be an argument based on the logic this Court employed in DiStefano. The question there was the location of the situs of injury for section 302(a)(3) purposes where an employee who lived and worked in New York was fired at a meeting held in New Jersey. DiStefano, 286 F.3d at 82-83.

We concluded that to determine "whether there is an injury in New York sufficient to warrant § 302(a)(3) jurisdiction[, courts] must generally apply a situs-of-injury test, which asks them to locate the original event which caused the injury." Id. at 84 (internal quotation marks omitted). "'This "original event" is, however, generally distinguished not only from the initial tort but from the final economic injury and

20

the felt consequences of the tort.'" Id. (quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 791 (2d Cir. 1999)). "[T]he original event occurs where the first effect of the tort that ultimately produced the final economic injury is located." Id. at 84-85 (internal quotation marks and ellipsis omitted).

In Mr. DiStefano's case, the "original event" occurred in New York because "the 'original event' [was] DiStefano's experience of being removed from his job." Id. at 85. "DiStefano experienced the 'first effect' of losing his job in New York, even though he was fired in New Jersey." Id. Penguin argues that similarly here, although the copying that allegedly infringed its copyright occurred in Oregon or Arizona, Penguin experienced the effect of the infringing conduct in New York, where its business was located and its copyright was located for present purposes. See, e.g., Appellant's Br. at 21 (alleging that the injury "was experienced by Penguin in New York, where its offices and personnel are located, and where its copyrights are held"); cf. Calder v. Jones, 465 U.S. 783, 789-90 (1984) (concluding that jurisdiction over Florida defamation defendants in California satisfied Due Process standards because the defendants wrote and edited article "they knew would have a potentially devastating impact upon" the plaintiff, a California resident).

Although we have never extended this logic to conclude that there was jurisdiction in New York courts over a defendant

21

in an intellectual property dispute, district courts in this Circuit have. See, e.g., McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp., 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) ("The torts of copyright and trademark infringement cause injury in the state where the allegedly infringed intellectual property is held.");[5] Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp., No. 04 Civ 5002, 2005 WL 357125, at *1, 2005 U.S. Dist. LEXIS 2143, at *4 (S.D.N.Y. Feb. 14, 2005) ("[B]ecause the plaintiffs (and their intellectual property) are based in New York, the injury is felt within the state no matter where the infringement takes place.").[6] Similarly, in Savage Universal Corp. v. Grazier Constr., No. 04 Civ. 1089, 2004 WL 1824102, 2004 U.S. Dist. LEXIS 16088 (S.D.N.Y. Aug. 13, 2004), the district court found the situs of injury under section 302(a)(3) to be New York State where an out-of-state defendant committed trademark infringement that affected a New York-based defendant's website through damage to its goodwill, lost sales, or lost customers. Id., 2004 WL 1824102 at *9, 2004 U.S. Dist. LEXIS 16088, at *29-*30 (citing

---

[5] American Buddha tries to distinguish this statement as dictum because the defendant in McGraw-Hill had actual contacts with New York. Those contacts are relevant to an inquiry under section 302(a)(1), not section 302(a)(3), which is at issue here.

[6] See also Royalty Network Inc. v. Dishant.com, LLC, 638 F. Supp. 2d 410, 423 (S.D.N.Y. 2009); Mfg. Tech. Inc. v. Kroger Co., No. 06 Civ. 3010, 2006 WL 3714445, at *2, 2006 U.S. Dist. LEXIS 90393, at *5 (S.D.N.Y. Dec. 13, 2006); Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 115 F. Supp. 2d 367, 376-77 (S.D.N.Y. 2000); Cello Holdings, L.L.C. v. Lawrence-Dahl Cos., 89 F. Supp. 2d 464, 470 (S.D.N.Y. 2000).

22

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 568 (S.D.N.Y. 2000)).

Although, as noted, Penguin does allege copyright infringement through the "distribution" of its copyrighted work over the Internet, Compl. ¶ 28, Penguin does not specifically allege the loss of customers or other direct harm in New York, distinguishing this case from most of those cited, *see, e.g.*, *id.*; *Citigroup*, 97 F. Supp. 2d at 568. But these cases can be read to suggest that the injury from the infringement of an intellectual property right committed outside of New York may be a New York injury for section 302(a)(3) purposes if it adversely affects the plaintiff and his intellectual property in New York.

2. Legal Arguments Against Deeming New York To Be the Situs of Injury. Looking not to domicile or residence but to lost business at the site of the allegedly infringing action taken by the defendant, some other district courts in this Circuit have concluded that injuries resulting from intellectual property torts occur where the infringing action is taken. *See, e.g.*, *Art Leather Mfg. Co., Inc. v. Albumx Corp.*, 888 F. Supp. 565, 568 (S.D.N.Y. 1995) ("A patent holder suffers economic loss at the place where an infringing sale is made because the holder loses business there."); *Freeplay Music, Inc. v. Cox Radio, Inc.*, No. 04 Civ. 5238, 2005 WL 1500896, at *8, 2005 U.S. Dist. LEXIS 12397 at *24 (S.D.N.Y. June 23, 2005) ("In cases of commercial torts, the place of injury will usually be located where the critical events associated with the dispute took place. In this

23

case, the critical events are [the defendant's] alleged unlicensed use of [the plaintiff's] recordings and compositions." (internal quotation marks and citation omitted)). The district court relied on this line of cases to conclude that Penguin's injury occurred where the book was impermissibly copied, since that is where the sale was lost. See Penguin, 2009 WL 1069158, at *4, 2009 U.S. Dist. LEXIS 34032, at *11-*12.

V. Due Process

The question whether defining the situs of injury here as New York so as to give rise to jurisdiction in New York over Penguin's claims against American Buddha would violate American Buddha's right to Due Process is beyond the scope of this appeal. We do not, as a general matter, conduct the due process analysis until we have first determined that there is personal jurisdiction under New York's Long-Arm Statute. See Best Van Lines, 490 F.3d at 242; Savin, 898 F.2d at 306.

Here, were we eventually to agree with Penguin, contrary to the district court's decision, that the situs of injury was indeed New York, the proper course would be to remand to the district court to consider the remaining four factors for personal jurisdiction under the long-arm statute. See LaMarca, 95 N.Y.2d at 214, 735 N.E.2d at 886, 713 N.Y.S.2d at 307 (setting out five-part test for jurisdiction under section 302(a)(3)). At least two of those factors -- that American Buddha reasonably expected an injury to occur in New York and that American Buddha derives substantial revenue from interstate or international

24

commerce -- were not analyzed by the district court. Penguin, 2009 WL 1069158, at *4, 2009 U.S. Dist. LEXIS 34032, at *13 ("[I]t is not necessary to explore whether plaintiff has met its burden on the other elements necessary to establish jurisdiction under Rule 302(a)(3)(ii), or whether the exercise of jurisdiction would comport with due process."). Inasmuch as these issues likely involve additional questions of fact, they would best be decided by the district court, if necessary, in the first instance.

VI. Certification to the New York Court of Appeals

The rules of this Circuit provide that "[i]f state law permits, the court may certify a question of state law to that state's highest court." 2d Cir. R. 27.2; see also Prats v. Port Auth. of N.Y. & N.J., 315 F.3d 146, 150-51 (2d Cir. 2002). Our certification to the New York Court of Appeals is discretionary, see McCarthy v. Olin Corp., 119 F.3d 148, 153 (2d Cir. 1997), and we have recognized several factors as guiding that discretion.

First, and most important, certification may be appropriate if the New York Court of Appeals has not squarely addressed an issue and other decisions by New York courts are insufficient to predict how the Court of Appeals would resolve it. See Kuhne v. Cohen & Slamowitz, LLP, 579 F.3d 189, 198 (2d Cir. 2009); O'Mara v. Town of Wappinger, 485 F.3d 693, 698 (2d Cir. 2007). As discussed above, there are two competing lines of cases dealing with the issue here. The proper resolution of this

25

appeal depends on a determination as to which of those lines of cases is correct.

Second, certification may be appropriate if the "statute's plain language does not indicate the answer." Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 51 (2d Cir. 1992); Colavito v. N.Y. Organ Donor Network, Inc., 438 F.3d 214, 229 (2d Cir. 2006). Here, for the reasons discussed, we think that neither the plain language nor the legislative history of section 302(a)(3) makes clear the location of the situs of injury in a copyright infringement case.

Third, certification may be appropriate if a decision on the merits requires value judgments and important public policy choices that the New York Court of Appeals is better situated than we to make. See Colavito, 438 F.3d at 229; Blue Cross & Blue Shield of N.J., Inc. v. Phillip Morris USA, Inc., 344 F.3d 211, 221 (2d Cir. 2003). Resolution of this appeal requires deciding how the New York Legislature intended to strike the balance between the protection of New York-based intellectual property holders and the rights of defendants with few if any apparent ties to New York beyond the availability of material they have uploaded to a website out-of-state. The New York Court of Appeals is better situated to ascertain the New York State Legislature's intent than are we.

Finally, certification may be appropriate if the questions certified will control the outcome of the case. See O'Mara, 485 F.3d at 698 (analyzing earlier version of the Second

26

Circuit local rule governing certification).  Here, resolution of the certified issue will determine how we resolve this appeal -- if not necessarily whether jurisdiction will ultimately be found appropriate in New York State.  If the New York Court of Appeals deems the situs of injury under the circumstances presented by this case to be the location of the infringing conduct, we will doubtless affirm the district court's judgement.  If the Court of Appeals decides the situs of injury to be the location of the plaintiff and the intellectual property at issue, then the district court's opinion must, with virtual certainty, be vacated and we expect to remand for further proceedings.

Because all four factors weigh in favor of certification, we hereby certify the question restated below.

**CONCLUSION**

For the foregoing reason, we certify the following question to the New York Court of Appeals:  **In copyright infringement cases, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?**

As is our practice, we do not intend to limit the scope of the Court of Appeals' analysis through the formulation of our question and we invite the Court of Appeals to expand upon or alter this question as it should deem appropriate.  <u>See</u>

27

_Kirschner v. KPMG LLP_, 590 F.3d 186, 195 (2d Cir. 2009). For example, we recognize that the presence of online libraries and the Internet may have an impact on the Court of Appeals' evaluation of the situs of injury and may figure in the Court's analysis.

Pursuant to New York Court of Appeals Rule 500.17 and United States Court of Appeals for the Second Circuit Rule 27.2, it is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York this opinion as our certificate, together with a complete set of the briefs, appendix, and record filed in this Court by the parties. We direct the parties to bear equally any fees and costs that may be imposed by the New York Court of Appeals in connection with this certification. This panel will retain jurisdiction of the appeal after disposition of this certification by the New York Court of Appeals, and after the Court of Appeals judgment should it choose to accept this certification.

28